## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RTC INDUSTRIES, INC., | ) | **Case No. 17 C 3595** |
| Plaintiff, | ) | |
| | ) | **District Judge Pacold** |
| v. | ) | **Magistrate Judge Schenkier** |
| FASTENERS FOR RETAIL, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this patent infringement case, plaintiff RTC Industries, Inc. ("RTC") and defendant Fasteners for Retail, Inc. ("FFR") have filed dueling motions to compel (doc. # 226: Pl.'s Mot. to Compel; doc. # 232: Def.'s Mot. to Compel), each challenging certain of the other side's assertions of attorney-client privilege as a basis to withhold documents or information from production. Pursuant to a protocol established by the Court, RTC sent a Rule 37.2 letter to FFR, to which FFR responded (Pl.'s Mot. to Compel, Ex. 1, at 2-13: Pl.'s Rule 37.2 Ltr.; Pl.'s Mot. to Compel, Ex. 2, at 2-20: Def.'s Rule 37.2 Resp.). Similarly, FFR sent a Rule 37.2 letter to RTC, to which RTC responded (Def.'s Mot. to Compel, Ex. A, at 2-28: Def.'s Rule 37.2 Ltr.; Def.'s Mot. to Compel, Ex. B, at 2-16: Pl.'s Rule 37.2 Resp.). Thereafter, the parties engaged in several hours of court-reported meet and confer sessions (Pl.'s Mot. to Compel, Ex. 3: 8/7/19 Tr.; *id.*, Ex. 4: 8/13/19 Tr. (Part 1); Def.'s Mot. to Compel, Ex. D: 8/13/19 Tr. (Part 2)).[1] Although this protocol resolved some issues, the parties still present a litany of disputes for our resolution.

---

[1] All documents accompanying the parties' motions were filed under seal (docs. ## 227, 234). If we must refer to a sealed document, we attempt to do so without revealing any information that could be reasonably deemed

We have reviewed the parties' Rule 37.2 letters and responses, the relevant attachments, the transcripts of the meet and confer sessions, and the withheld and redacted documents provided by the parties for our *in camera* review. Our rulings on the parties' motions are set forth below.

## I.

The attorney-client privilege protects from disclosure "[c]onfidential communications between a client and her lawyer for the purpose of receiving legal advice." *United States v. Bey*, 772 F.3d 1099, 1101 (7th Cir. 2014); *see also United States v. Leonard-Allen*, 739 F.3d 948, 953 (7th Cir. 2013) (stating that the attorney-client privilege "covers only those communications which reflect the lawyer's thinking or are made for the purpose of eliciting the lawyer's professional advice or other legal assistance") (internal alteration and quotations omitted).[2] The attorney-client privilege, however, "is in derogation of the search for the truth," so "it is construed narrowly." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

When a party withholds an otherwise discoverable document based on the attorney-client privilege, it must expressly claim that privilege, and it generally does so by identifying that document on a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013). The proponent of the privilege bears the burden of showing that the attorney-client privilege is applicable to each of the documents identified on the log. *See United*

---

confidential. Nonetheless, to the extent we discuss confidential information, we have done so because it is necessary to explain the path of our reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality"); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

[2] In patent cases, Federal Circuit law applies for those privilege disputes that relate to an issue of substantive patent law; otherwise, Seventh Circuit law applies. *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1363 n.6 (Fed. Cir. 2017); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803-04 (Fed. Cir. 2000). The disputes here do not appear to implicate substantive patent law, and neither party cites to or relies upon Federal Circuit law. Thus, we apply Seventh Circuit law to the privilege issues raised in the parties' motion.

*States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) ("The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements"); *Evans v. City of Chicago*, 231 F.R.D. 302, 311 (N.D. Ill. 2005) ("The party asserting the attorney-client privilege has the burden of establishing each of [the privilege's] elements on a document-by-document basis").

Each party has served multiple privilege logs. The parties first exchanged privilege logs on January 18, 2019 (doc. # 227-2, at 196-1404: Pl.'s Orig. Priv. Log; doc. # 227-1, at 132-201: Def.'s Orig. Priv. Log). FFR served an amended privilege log a little more than a month later (doc. # 227-1, at 15-81: Def.'s 1st Am. Priv. Log). On August 2, 2019, FFR served a second amended privilege log, and RTC served a second supplemental privilege log (doc. # 227-2, at 47-194: Def.'s 2d Am. Priv. Log; doc. # 227-2, at 1406-40: Pl.'s 2d Suppl. Priv. Log).[3] About a week later, and after the parties had already exchanged their Rule 37.2 correspondence regarding FFR's challenges to RTC's privilege log, RTC again supplemented its privilege log (8/13/19 Tr. (Part 2) at 88:5-22).[4] As of its second supplement, RTC's privilege log contains 16,267 entries; FFR's second amended privilege log contains 1,289 entries.

## II.

We start by addressing an issue common to both parties' motions: the adequacy of certain descriptions frequently used by each side to describe its withheld or redacted documents. A privilege log entry should include "a description of the subject matter in sufficient detail to determine if legal advice was sought or revealed[.]" M.J. Schenkier's Case Procedures, Privilege

---

[3] It is unclear whether RTC served a first supplemental privilege log before it served its second supplement.

[4] Because RTC served this third supplement after it responded to FFR's Rule 37.2 letter, it is not part of the Rule 37.2 correspondence that the parties filed in connection with their motions.

Logs, available at https://www.ilnd.uscourts.gov/judge-info.aspx?EBclBxz8ceU= (last visited Oct. 8, 2019); *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii) (a party must describe the nature of the withheld document "in a manner that . . . will enable other parties to assess the claim" of privilege). Put another way, the description of the subject matter of a withheld or redacted document "must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the requirements" of the asserted privilege. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992). Each party complains that certain descriptions from the other party's privilege log fail to meet this requirement.

### A.

RTC asserted that FFR's descriptions of documents as "regarding intellectual property," "regarding intellectual property issues," "regarding contracts," or "regarding product samples" (found in 183 entries) were inadequate (Pl.'s Mot. at 3; Pl.'s Rule 37.2 Ltr. at 10-11; 8/13/19 Tr. (Part 1) at 135:11-136:5). As examples of the purportedly inadequate descriptions, RTC identified three log entries, which describe the corresponding documents as constituting (1) privileged and confidential information; (2) reflecting, or prepared for the purpose of requesting; (3) legal analysis and advice from or of counsel; (4) regarding intellectual property, contracts, or product samples (Pl.'s Rule 37.2 Ltr. at 10-11).

FFR, "in an effort to compromise," responded by saying that it provided additional detail for the challenged log entries "where feasible" (Def.'s Rule 37.2 Resp. at 12-13). FFR's Rule 37.2 response did not explain what this additional level of detail entailed (*see id.*), but according to the parties' subsequent meet and confer, examples where FFR provided additional detail included changing the phrases "regarding intellectual property" to "regarding intellectual property *strategy*," "regarding contracts" to "regarding contract *compliance*," and "regarding product

4

samples" to "regarding product samples *legal strategy*" (8/13/19 Tr. (Part 1) at 135:6-136:19 (emphases added); *compare, e.g.*, Def.'s 1st Am. Priv. Log at 7-8, 20 (log entries 82, 108, and 313), *with* Def.'s 2d Am. Priv. Log at 12, 16, 48 (log entries 82, 108, and 313)). RTC contends that FFR's additional descriptions still do not provide sufficient detail and that FFR should be made to produce the documents corresponding to these log entries (8/13/19 Tr. (Part 1) at 136:20-25; Pl.'s Rule 37.2 Ltr. at 11-12).

### B.

For its part, FFR argues that RTC's description of documents that relate to legal advice regarding "patent prosecution," which is found in more than 13,000 entries, is inadequate (Def.'s Mot. at 4-5; Def.'s Rule 37.2 Ltr. at 15-16). FFR also contends that RTC's log entries that describe a document as providing or requesting legal advice "re: contract issues," "re: sales issues," or "re: business transaction" are inadequate because the level of detail provided by these log entries is similar to the level of detail provided by the "intellectual property," "contracts," and "product samples" log entries provided by FFR that RTC has challenged as inadequate (Def.'s Mot. at 5-6; Def.'s Rule 37.2 Ltr. at 19-20; *see also* Def.'s Rule 37.2 Resp. at 13-14). FFR identified exemplary RTC log entries that described the documents at issue as (1) reflecting, or requesting and providing information for the purpose of obtaining or rendering, legal advice; (2) re: contract issues, sales issues, or business transaction (Def.'s Rule 37.2 Ltr. at 19-20). In short, FFR argues that if similar descriptions provided by FFR are inadequate, so are these descriptions from RTC.

FFR asked RTC to provide its position on "what level of detail is needed with respect to" the descriptions challenged by both parties so that FFR could consider it "and, if appropriate, conform its log so that this issue can be resolved without court intervention" (Def.'s Rule 37.2 Ltr. at 20). RTC did not directly address the "level of detail" that was necessary from the parties' log

entries in its response or, as far as we can tell, at the parties' subsequent meet and confers. Instead, RTC responded by amending the descriptions of the "contract issues," "sales issues," and "business transaction" log entries identified by FFR or, alternatively, removing the log entry and producing the previously withheld and logged document (Pl.'s Rule 37.2 Resp. at 7-15).[5] RTC did this for approximately 100 individual log entries (*Id.*). RTC also argued that its "patent prosecution" description "provided more than enough information for FFR to assess RTC's claim of privilege or other protection for these documents" (*Id.* at 6). FFR now moves to compel RTC to conduct a global re-review of its withheld documents; produce any document that is not subject to a proper claim of privilege; and, for any document that RTC maintains is still privileged, revise the entry to provide additional information that enables FFR to evaluate RTC's privilege claim (Def.'s Mot. at 4-6).

## C.

The parties' extensive back-and-forth has done regrettably little, if anything, to help us resolve this particular dispute. RTC, which first raised the inadequacy issue, has refused to explain to FFR (and to us) what additional information it seeks in order to assess FFR's privilege claims for the 183 log entries it identified. Nor do we know what additional detail FFR wants from RTC's log entries. Indeed, the parties never discussed whether the numerous "contract issues," "sales issues," and "business transaction" log entry amendments contained in RTC's Rule 37.2 response are satisfactory (8/13/19 Tr. (Part 2) at 132:3-144:16). Instead, FFR's primary contention appears to be that RTC's descriptions are inadequate if FFR's descriptions are inadequate (and, conversely,

---

[5] RTC also identified several instances where it logged, as separate entries, logo files (*e.g.*, .jpg, .gif, or .bmp files) that were embedded in withheld emails (Pl.'s Rule 37.2 Resp. at 13). RTC offered to produce the logo files if FFR wanted them; otherwise, RTC planned to remove the corresponding entries from its privilege log (*Id.*).

if RTC's descriptions are adequate, so are FFR's descriptions). In that sense, FFR's challenge is more of a defense in response to RTC's challenge rather than an affirmative attack on RTC's descriptions.

It should go without saying, but the level of specificity required for a privilege log entry is the same for both parties. Neither party is entitled to tell the other to "do as I say, not as I do." If RTC believes in good faith that the detail it has used to describe its privileged documents is adequate, it cannot expect more from FFR's log entries, and vice versa.[6] As such, the parties should have directly addressed the issue by discussing what level of detail they deem to be necessary from both of their respective privilege logs. This could have resolved this issue without our intervention and, at the very least, it would have given us insight into the level of detail each party asserts is necessary to resolve the issue. No such discussion, however, took place.

Thus, we order RTC and FFR to meet and confer regarding the level of detail that *both* parties believe should be included in their privilege log entries so their privilege claims can be adequately assessed. This discussion should address (1) what additional detail RTC wants from FFR's description of the "intellectual property," "contracts," and "product samples" log entries; (2) what additional detail FFR wants from RTC's "patent prosecution" entries; and (3) whether RTC's updated descriptions of its "contract issues," "sales issues," and "business transaction" log entries are adequate. Then, to the extent necessary after the parties' meet and confer, RTC must

---

[6] We thus question RTC's assertion that its original "contract issues," "sales issues," and "business transaction" log entry descriptions provided "sufficient information . . . for FFR to evaluate a claim of privilege" (8/13/19 Tr. (Part 2) at 133:21-134:2) when, at the same time, it challenged as inadequate log descriptions from FFR that contained a nearly identical level of detail (Pl.'s Rule 37.2 Ltr. at 10-11; Def.'s Rule 37.2 Ltr. at 19-20). Similarly, it is unclear why merely reciting "patent prosecution" in a log entry is sufficient because patent prosecution "routinely involves attorney communications" (Pl.'s Rule 37.2 Resp. at 6) but, at the same time, reciting "intellectual property strategy," "contract compliance," or "product samples legal strategy" is insufficient (*see* 8/13/19 Tr. (Part 1) at 136:6-25), as those subjects seem just as likely to involve attorney communications.

supplement all its privilege log entries to address the issues raised by FFR, and FFR must

supplement all its privilege log entries to address the issues raised by RTC.[7]

We further caution the parties to distinguish between privilege log challenges based on an

inability to assess a privilege claim because of an inadequate description and challenges based on

a generalized lack of confidence in the other party's assessment of whether a document properly

can be withheld or redacted as privileged. We do not expect that either party will challenge log

entries that, on their face, provide a description sufficient to support a privilege claim without some

good reason.

### III.

We now turn to the issues that are unique to RTC's motion to compel. We begin with the

overarching substantive issues raised by RTC's motion. Then, we address FFR's assertion of

attorney-client privilege for each of the 30 documents identified by RTC for our *in camera* review.

### A.

RTC first contends that FFR has waived the attorney-client privilege for certain documents

that were disclosed to employees of an entity named Olympus Partners (Pl.'s Rule 37.2 Ltr. at 5;

Pl.'s Mot. at 2, 4).[8] "One of the limitations on the exercise of the [attorney-client] privilege is the

---

[7] To be clear, addressing the "issues" raised by the other party is not limited to addressing only those specific log entries identified by that party in its Rule 37.2 correspondence as examples of repeatedly used but allegedly inadequate descriptions. For example, if the parties agree that RTC's "patent prosecution" log entries need more detail, RTC must update all the log entries that contain the "patent prosecution" description, not just the specific ones identified by FFR in its Rule 37.2 letter. If hundreds (or thousands) of log entries contain the same allegedly inadequate description, and the alleged inadequacy does not turn on any other characteristics of the document at issue (such as author or recipient), it is a waste of time and paper to require a party to identify each and every one of these log entries in its meet and confer correspondence.

[8] The documents at issue are represented by log entries 267, 283, 290, 300, 304, 309, 1043-48, 1055-56, 1068, 1070, and 1078. RTC's motion also identifies log entries 692-701, 1049, 1053, 1061, 1069, and 1071, but FFR deleted those log entries when it served its second amended privilege log (Pl.'s Mot. at 2; Def.'s 2d Am. Priv. Log at 102, 126-27). The Olympus Partners employees identified as authors or recipients for the log entries still at issue are James Conroy, managing partner; David Haddad, partner; Matt Boyd, principal; Robert Morris, managing partner;

recognition that it may be waived," *BSP Software, LLC v. Motio, Inc.*, No. 12 C 2100, 2013 WL 3456870, at *2 (N.D. Ill. July 9, 2013), and "[p]erhaps the most common instance of waiver is where an otherwise privileged communication is disclosed to a third party outside the scope of the privilege." *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 215 (N.D. Ill. 2001); *see also Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) ("Knowing disclosure to a third party almost invariably surrenders the [attorney-client] privilege with respect to the world at large"). RTC relies upon this general principle to argue that FFR waived any applicable attorney-client privilege that may have applied to the documents at issue when it shared the documents with third parties, *i.e.*, employees of Olympus Partners (Pl.'s Rule 37.2 Ltr. at 3, 5).[9]

FFR responds that there has been no waiver because a company does not waive its attorney-client privilege when it shares privileged communications with a board member or employee of its majority owner (Def.'s Rule 37.2 Resp. at 2-3). And, according to FFR, the individuals to whom the documents at issue were disclosed work for FFR's majority owner, "Olympus," and two of the individuals (James Conroy and David Haddad) are also members of FFR's Board of Directors (*Id.* at 2). (In a prior filing, FFR asserted that Messrs. Conroy and Haddad are also officers of FFR) (doc. # 72 at 1, 8). However, FFR's Rule 37.2 response is notable in its failure to clearly lay out

_____

Pete Tedesco, vice president; Connor Wood, associate; and Jill Mence, administrative assistant (Def.'s 2d Am. Priv. Log at 38, 43-44, 47-48, 125-27; *id.*, "Names and Capacities of Persons on FFR's Second Amended Privilege Log").

[9] Although RTC asserted that the disclosure of documents to Olympus Partners surrendered FFR's claim to attorney-client "privilege *or work product protection*" (Pl.'s Rule 37.2 Ltr. at 5 (emphasis added)), RTC's legal arguments only address attorney-client privilege (*Id.* at 3). Thus, we similarly address only attorney-client privilege. *See Woodard v. Victory Records, Inc.*, No. 14 CV 1887, 2014 WL 2118799, at *8 (N.D. Ill. May 21, 2014) ("Attorney-client and work-product protections are two independent privileges which require separate analyses and reflect different policies"); *see also Monco v. Zoltek Corp.*, 317 F. Supp. 3d 995, 1005 (N.D. Ill. 2018) ("[U]nlike the situation involving attorney-client privilege, disclosure to a third party doesn't necessarily waive work product protection"). Moreover, FFR only asserted work product for one of the seventeen log entries challenged by RTC on this issue (log entry 1044) and that assertion was accompanied by an attorney-client privilege assertion (Def.'s 2d Am. Priv. Log at 38, 43-44, 47-48, 125-27).

the actual relationship between FFR and any of the Olympus entities (Def.'s Rule 37.2 Resp. at 2-4), which is information presumably known by FFR. Instead, relying upon the doctrine of judicial estoppel, which "prevents parties from playing 'fast and loose' with the courts by prevailing twice on opposing theories," *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010), FFR points to instances in this litigation and another proceeding where RTC asserted that FFR is owned by "Olympus Growth Fund V, L.P." and owned, managed, and/or controlled by "Olympus" (Def.'s Rule 37.2 Resp. at 3-4).

### 1.

We start with Messrs. Conroy and Haddad. FFR points to one case to argue that FFR's attorney-client privilege encompasses these individuals: *Jones v. National Council of Young Men's Christian Associations of the United States of America*, No. 09 C 6437, 2011 WL 1740122 (N.D. Ill. May 3, 2011) (Def.'s Rule 37.2 Resp. at 2). In *Jones*, a court in this district found that the distribution of a PowerPoint presentation to the defendant's Board of Directors did not waive the defendant's attorney-client privilege. 2011 WL 1740122, at *1. In doing so, the court noted that the scope of attorney-client privilege for a corporate party "may extend to corporate decision makers or those who substantially influence corporate decisions," and that a court should consider "whether the communications were made with the intent of providing legal advice, whether the communications concerned matters within the scope of the employees' duties, and whether the employees were well aware that the information was being used for providing legal advice." *Id.* The *Jones* court found that the PowerPoint presentation satisfied these factors, but it did so without any extended analysis. *Id.*

We are satisfied that, as board members and officers of FFR, Messrs. Conroy and Haddad are properly within the scope of FFR's attorney-client privilege. If "the power to waive the

corporate attorney-client privilege . . . is normally exercised by its officers and directors," *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 348 (1985), those officers and directors must be encompassed by the attorney-client privilege in the first place. *See also Brainerd & Bridges v. Weingeroff Enter., Inc.*, No. 85 C 493, 1986 WL 10638, at *2 (N.D. Ill. Sept. 19, 1986) ("[I]t is the client who holds the privilege, and the power to waive it is his alone"). And cases from this district support extending a company's attorney-client privilege to its board members. *See, e.g., Jones*, 2011 WL 1740122, at *1; *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 454 (N.D. Ill. 2006) (finding "conversations among the board members discussing their attorney's legal advice, and conversations among the board members and their attorney about potential litigation risk and legal strategy" attorney-client privileged); *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 378-80 (N.D. Ill. 1999) (finding that the attorney-client privilege applied to "litigation strategy or confidential information communicated between the board and its attorney" and to "conversations among the board members discussing their attorney's legal advice about potential litigation risk and legal strategy"). Thus, if the only Olympus-affiliated individuals involved with a privileged communication are Mr. Conroy and/or Mr. Haddad, the redacted or withheld communication need not be produced.

## 2.

We come to a different conclusion regarding the other Olympus Partners employees who, unlike Messrs. Conroy and Haddad, do not also hold positions with FFR. In doing so, we note that Olympus Partners is not necessarily the same as "Olympus" (or Olympus Growth Fund V, L.P., for that matter). It appears that both RTC and FFR have defined Olympus broadly or narrowly depending on what best suits them at the time. For instance, when asserting earlier in this litigation that Olympus owned and managed FFR, RTC defined "Olympus" as Olympus Growth Fund V,

L.P.; Olympus Advisors, LLC; and affiliated investment funds (doc. # 133 at 1 n.1). Then, to define "Olympus" in a separate proceeding involving FFR's petition to institute an *inter partes* review (IPR) against one of the patents-in-suit, RTC added Olympus Partners, L.P. to this list of entities (doc. # 227-2 at 32 n.1). FFR, for its part, identified both Olympus Advisors, LLC (which it also referred to as Olympus Partners) and Olympus Growth Fund V, L.P. as *separate*, non-parties when moving to quash subpoenas that RTC served on these entities (doc. # 72 at 1). Now, for the question of whether a privilege has been waived, the roles are reversed: RTC wants to define "Olympus" narrowly, while FFR wants to define "Olympus" broadly.

We decline to resolve this dispute based on what one party or the other asserted elsewhere about the FFR-Olympus relationship when addressing different issues. *See In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012) ("Judicial estoppel is a matter of equitable judgment and discretion"). Instead, we have sought to determine the actual relationship between FFR and Olympus Partners, and for that, we look to the decision of the Patent Trial and Appeal Board ("PTAB") in denying FFR's petition to institute an IPR, which contains an explanation from a neutral third-party (the PTAB) about the relationship between FFR, Olympus Partners, and the other Olympus entities (*see* doc. # 155-5: IPR Denial).

As set forth in the PTAB's decision, FFR is solely owned by FFR DSI Intermediate Holdings, Inc., which, in turn, is owned by FFR DSI Holdings, Inc. (IPR Denial, at 6; *see also* doc. # 17 (stating that FFR is wholly owned by FFR DSI Intermediate Holdings)). The majority shareholder of FFR DSI Holdings, Inc. is Olympus Growth Fund V, L.P. (IPR Denial, at 7). Olympus Advisors LLC, which does business under the name Olympus Partners, is a private equity and venture capital firm that provides advisory services to Olympus Growth Fund V, L.P. (*Id.* at 6-8). Looking at this in the opposite direction, *i.e.*, from top to bottom, Olympus Partners (the

entity at issue) provides "advisory services" to Olympus Growth Fund V, L.P., which is the majority shareholder of FFR DSI Holdings, Inc., which owns, through FFR DSI Intermediate Holdings, Inc., FFR.

Thus, the question is whether FFR has shown that, given this relationship, communications to and from Olympus Partners' employees (at least those who are not also board members or officers of FFR) are encompassed by FFR's attorney-client privilege. We find that it has not.

In doing so, we do not quarrel with the general proposition "that confidential documents shared between members of a corporate family do not waive the attorney-client privilege." *In re JP Morgan Chase & Co. Sec. Litig.*, No. 06 C 4674, 2007 WL 2363311, at *6 (N.D. Ill. Aug. 13, 2007). But FFR has not shown that Olympus Partners is a member of FFR's "corporate family." Olympus Partners is not in a typical parent-subsidiary or shareholder relationship with FFR. Instead, it provides "advisory services" to an entity that is in that sort of relationship—Olympus Growth Fund V., L.P., which is the majority shareholder of an entity that indirectly owns FFR.

Ultimately, it was FFR's burden to show that disclosure to Olympus Partners did not waive its attorney-client privilege. *Glenwood Halsted LLC v. Vill. of Glenwood*, No. 11-CV-6772, 2013 WL 140794, at *2 (N.D. Ill. Jan. 11, 2013) (the party asserting the privilege bears the burden of establishing "that the document was not disclosed to non-privileged recipients"); *Square D Co. v. E.I. Elecs., Inc.*, 264 F.R.D. 385, 390 (N.D. Ill. 2009) ("The party asserting the privilege bears the burden of showing that the privilege . . . has not been waived"). FFR could have attempted to do so by spelling out its relationship with Olympus Partners—one where Olympus Partners provides advisory services to an entity that indirectly owns a majority of FFR—and then arguing that case law supports extending the attorney-client privilege to communications between entities in identical or similar set-ups. Instead, FFR chose to merely rely on RTC's assertions about the

"Olympus" relationship with FFR and case law that addresses, in general terms, the attorney-client privilege in the context of corporate relationships. In these circumstances, and given that the attorney-client privilege must be construed narrowly, *Evans*, 113 F.3d at 1461, FFR did not meet its burden. FFR must therefore produce any withheld documents or information that was disclosed to or by employees of Olympus Partners who are not also board members or officers of FFR.

## B.

The second issue raised by RTC concerns documents that FFR "clawed back."[10] On February 22, 2019, FFR clawed back 24 documents (hereafter the "clawback documents") that it claimed "contain or reflect privileged communications and/or attorney work product" and were inadvertently produced (Pl.'s Mot. at 2-3; doc. # 227-1 at 129). FFR reproduced the clawback documents with redactions obscuring the portions that were purportedly privileged; however, it gave the documents Bates numbers that differed from their original Bates numbers and identified the redacted clawback documents on its first amended privilege log by these new Bates numbers (*see* Def.'s Rule 37.2 Resp. at 7-8). Moreover, FFR did not indicate in its first amended privilege log which entries corresponded to the redacted and reproduced clawback documents (Def.'s 1st Am. Priv. Log at 50, 62, 64-67). On May 30, 2019, RTC asked FFR for this information (doc. # 227-1 at 90) and after FFR failed to provide it, RTC raised the issue again in its July 17, 2019 Rule 37.2 letter (Pl.'s Rule 37.2 Ltr. at 6). In its Rule 37.2 response, FFR included a table identifying the original Bates numbers of the clawback documents, the corresponding Bates numbers for the

---

[10] Under the protective order governing this litigation, a party can "claw back" a document that it produced but later claims to be privileged (doc. # 201: Modified Protective Order, at ¶ 5(b)). Once the producing party initiates the clawback procedure, the receiving party must return or destroy the document (*Id.*).

reproduced versions of the clawback documents, and the corresponding privilege log entries (Def.'s Rule 37.2 Resp. at 7-8).

FFR's table resolves this aspect of RTC's Rule 37.2 letter—RTC can use the table to identify the clawback documents on FFR's privilege log and assess FFR's asserted basis of privilege for each document.[11] Going forward, however, if either party claws back a document and then withholds it or reproduces a redacted version of it with new Bates numbers, the party must identify the clawed-back document as such in its representative privilege log entry. Even though the production or disclosure of a privileged document does not waive any applicable privilege, given the existence of an order in this case pursuant to Federal Rule of Evidence 502(d), the mere fact that a party claws back a document does not mean that the document is, in fact, privileged (*see* doc. # 201: Modified Protective Order, at ¶ 5). Indeed, the receiving party is permitted to challenge the producing party's privilege assertion over clawed-back information (*id.*, at ¶ 5(b)), and we can envision that in assessing whether such a challenge is warranted, the party would want to know which withheld or redacted documents were initially produced so that it can take a closer look at the privilege log descriptions for those documents.[12]

## C.

Next, RTC asserts that FFR made several unexplained changes to more than 250 log entries when it served its amended privileged log (RTC calls these entries the "altered log entries") (Pl.'s Mot. at 3; Pl.'s Rule 37.2 Ltr. at 6-9 & Ex. D.7). These changes included: changing the individual

---

[11] Nevertheless, we note that when faced with a Rule 37.2 letter, it was easy (and non-controversial) enough for FFR to provide the information requested by RTC about the reproduced clawback documents. There is no reason that FFR could not have provided this information when RTC first requested it.

[12] In fact, RTC has submitted for our *in camera* review four of the clawback documents to determine whether they are privileged. We assess FFR's privilege claim as to these particular documents below in section III.E (log entries 995, 1068, 1083, and 1085).

identified in the From/Author field (which, in many instances, involved changing the author from a non-attorney to an attorney or law firm); replacing one author with several different alleged authors; and removing an individual from the log entirely, such that authors who appeared on FFR's original privilege log no longer appear on FFR's amended privilege log (Pl.'s Rule 37.2 Ltr. at 6-9). RTC contends that these changes are so fundamental that any presumption of privilege has been destroyed, and it seeks the production of the documents corresponding to these log entries (*Id.* at 6, 9; 8/7/19 Tr. at 97:14-101:2).

FFR counters that it made the changes to its log entries in response to a request from RTC for additional information and supplementation (Def.'s Rule 37.2 Resp. at 9). FFR explained the changes to the log entries at issue as follows:

> When initially preparing its log, FFR used the "Author" metadata—where available—to generate the "from/author" column. However, upon conducting its re-review at RTC's request, FFR determined that many documents are saved locally by custodians in a manner that updated the author data, or are templates (created by one author) that are then edited by an author different than the creator of the template. For example, if an FFR employee sent an E-Document to attorney Jay Moldovanyi and asked Mr. Moldovanyi to update the document and send it back, in some circumstances the document metadata would still list an FFR employee as the author, but the "author" for purposes of evaluating privilege, *i.e.*, the attorney-revised document, is the author of the revised attachment, *i.e.*, the attorney. Consistent with its February letter [in response to RTC's request], FFR reviewed and updated its log with this clarified author information and provided it to RTC less than two weeks later.

(*Id.*). FFR contends that a finding of waiver for the entries at issue, which would require the production of the corresponding documents, is inappropriate given "FFR's good-faith efforts to work with RTC to resolve issues without Court intervention" (*Id.* at 9-10).

To start, we do not find that FFR has forfeited its claim of privilege over log entries merely by re-reviewing documents and amending its privilege log to fix what it says was incorrect information. In fact, this is what Federal Rule of Civil Procedure 26(e) requires. *See* Fed. R. Civ.

P. 26(e)(1)(A). Notably, RTC did not cite any case law in either its Rule 37.2 letter or the parties' meet and confer that would support a finding of forfeiture in these circumstances (Pl.'s Rule 37.2 Ltr. at 6-9; 8/7/19 Tr. at 97:14-124:19). Based on our review of the sample documents submitted *in camera* on this issue, we also do not see anything indicating that FFR made its changes for a nefarious purpose. For instance, where FFR changed the author from a non-attorney to an attorney or a law firm (log entries 977 and 984), the corresponding documents show that the change was correct, and the documents themselves are protected by the attorney-client privilege, as discussed below.

At the same time, the type and number of changes made by FFR concern us. FFR should have identified the correct authors from the get-go, as assessing the author(s) of a document is a fundamental step in determining whether that document is privileged. FFR's initial authorship errors also are not limited to a small subset of log entries. Rather, FFR mistakenly identified the authors for more than 250 log entries, which amounts to almost 20 percent of the entries on its privilege log. Moreover, although the accuracy of FFR's changes to log entries 977 and 984 gives us some faith that FFR's other authorship changes are likewise correct, many of the sample documents submitted on this issue do not clearly indicate their authors or the authors of the redacted information at issue, so we cannot be entirely sure that FFR's second attempt at identifying authorship for these documents was in fact more successful than its first.

Nor does FFR's bare bones explanation for the changes in its Rule 37.2 response allay our concern. FFR does not explain how it determined that "the 'Author' metadata" it relied upon "[w]hen initially preparing its log" was incorrect or how it decided that certain authors identified by this metadata should be removed from its privilege log (Def.'s Rule 37.2 Resp. at 9). And although FFR says that "many documents are saved locally by custodians in a manner that updated

the author data, or are templates (created by one author) that are then edited by an author different than the creator of the template," it does not identify which or how many log entries fall into either of these separate categories of documents (*Id.*). Similarly, FFR does not explain in what "circumstances the document metadata would still list an FFR employee as the author" or which or how many log entries were changed due to these circumstances (*Id.*).

Given all this uncertainty, RTC is entitled to know exactly how FFR went about modifying the authors for the 250-plus altered log entries. Accordingly, we order FFR to supply RTC with a detailed written explanation of how, for each of the altered log entries, it concluded that the original author metadata was incorrect and how it determined the authors that are currently identified in FFR's privilege log. Moreover, we order FFR to identify the company and role of those individuals who were originally named as authors on the altered log entries but were then removed. FFR should have provided this information to RTC with its original log, and although FFR has now determined that those individuals did not author the documents at issue, its initial identification of them suggests that they may have had access to the withheld documents. If that is the case, and the individual is a third party, that may present an issue of waiver that RTC is entitled to explore.

### D.

The last overarching issue addressed by RTC's motion pertains to FFR's removal of certain documents from its privilege log and its subsequent production of these documents (Pl.'s Mot. at 3-4). RTC has asked FFR to provide the Bates numbers corresponding to these previously withheld or redacted documents (Pl.'s Rule 37.2 Ltr. at 12; *e.g.*, 8/13/19 Tr. (Part 1) at 159:3-14, 160:12-16). FFR has refused. FFR asserts that RTC already has the requested information because the produced documents have Bates numbers on them, and it further asserts that providing "[t]he Bates number of a document that used to be on a privilege log and is now not being maintained as

privileged" is not an "appropriate use of [its] resources" (8/13/19 Tr. (Part 1) at 159:21-160:11, 160:17-18, 164:25-165:5).

We disagree. FFR must already know which previously withheld or redacted documents pertain to which Bates numbers; otherwise, it could not represent that the documents were, in fact, produced. Indeed, FFR already provided the production volumes (*e.g.*, FFR006, FFR010) where certain previously withheld or redacted documents are found (Def.'s Rule 37.2 Resp. at 15), which indicates that FFR knows exactly where the documents at issue can be found in its production. Moreover, providing information to help RTC identify documents that should not have been withheld or redacted by FFR to begin with—as shown by FFR's subsequent production—is not unreasonable or unduly burdensome.

At the same time, this requirement is a two-way street. To the extent that RTC has removed documents from its privilege log and then produced them, the same reasoning applies. Thus, if either party (RTC or FFR) has removed or subsequently removes a document from its privilege log and then produces the document, that party must inform the other party of the Bates numbers that correspond to the log entry for the previously withheld or redacted document.

### E.

As part of its motion raising the overarching issues discussed above, RTC has requested our *in camera* review of 30 documents withheld or redacted by FFR (Pl.'s Mot. at 4-6). These documents correspond to FFR's log entries 2, 68, 78, 169, 229, 304, 305, 310, 312, 313, 366, 410, 528, 566, 682, 814, 856, 860, 869, 977, 984, 995, 1033, 1048, 1055, 1066, 1068, 1083, 1085, and 1087 (*Id.*). FFR asserts attorney-client privilege over all these documents (Def.'s 2d Am. Priv. Log at 1, 10, 12, 21, 31, 47, 48, 55, 67, 87, 90, 102, 109, 112-14, 122-23, 125-28). We address FFR's privilege assertion with respect to each document below.

19

**Log entry 2 (redactions to FFR007553):** This log entry represents seven redactions to a document that includes a timeline of events with additional comments. FFR describes the redactions as "reflecting legal analysis and advice from counsel regarding intellectual property strategy and analysis" (Def.'s 2d Am. Priv. Log at 1).

We agree with FFR's privilege assertion for many of the redactions, and we find the redactions for the following timeline entries proper: 4-11-2012, 8-13-2014, 9-24-2014, 10-2-2014, and 2-20-2015. But the remaining two redactions, *i.e.*, the redaction for timeline entry 2-2015 and the redaction of item 3 on the list of "Lessons Learned and Lessons Proven," are not proper. None of this information reflects legal analysis or advice from an attorney, as FFR asserts. Thus, FFR must produce FFR007553 without these latter two redactions.

**Log entries 68 (redactions to FFR009994) and 78 (redactions to FFR010008):** The corresponding documents are two versions of an operations and marketing overview document. Log entry 68 represents three redactions, and log entry 78 represents five redactions. FFR describes the redactions on both documents as "reflecting legal analysis and advice of counsel regarding intellectual property strategy" (Def.'s 2d Am. Priv. Log at 10, 12).

None of the redactions corresponding to log entries 68 and 78 fit this description. Instead, the redacted passages merely refer to or describe business projects or strategies that appear to involve the review and monitoring of intellectual property. *See ChampionsWorld, LLC v. U.S. Soccer Fed'n*, 276 F.R.D. 577, 589 (N.D. Ill. 2011) ("[C]ommunications regarding business strategy are not governed by the attorney-client privilege"); *see also Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 115 (N.D. Ill. 1996) (explaining that for the attorney-client privilege to apply, legal advice "must be the predominant element in the communication" and that the privilege "will not apply where the legal advice is incidental to business advice"). Nowhere do we

see legal advice or analysis disclosed. Thus, FFR must remove the redactions from FFR009994 and FFR010008.

**Log entry 169:** This document contains analyses of patents that would typically come from an attorney or be prepared for an attorney, and FFR describes it as an attachment "reflecting legal analysis and advice of counsel regarding patents" (Def.'s 2d Am. Priv. Log at 21). Based on our review of the document, we find FFR's assertion of attorney-client privilege appropriate.

**Log entry 229 (redactions to FFR016541):** The corresponding document is a spreadsheet that contains two redactions. The first redaction conceals everything on a sheet titled "Develop a market-leading Intellectual Property Capability," and the second redaction conceals a sentence on a sheet titled "Pull Out, Drop Down Shelf (PODD)."

FFR says this redacted information "reflect[s] legal analysis and advice of counsel regarding intellectual property analysis and strategy" (Def.'s 2d Am. Priv. Log at 31). It does not. A mere reference to intellectual property in a document does not equate to the conveyance of legal analysis and advice, and nothing in the two redactions represented by log entry 229 reveals any legal analysis or advice. FFR must produce FFR016541 without redaction.

**Log entries 304 and 305:** Log entry 304 is an August 8, 2012 email from Stan Burson, FFR's president and CEO, to Messrs. Haddad and Conroy, and log entry 305 is the attachment to that email. The attachment contains an attorney's proposed revisions to a document, and the email requests input from Messrs. Haddad and Conroy about the proposed revisions. We find that these two documents have been properly withheld as subject to the attorney-client privilege.

**Log entry 310:** This document is nearly identical to the document corresponding to log entry 305. We find that it is privileged for the same reasons as log entry 305.

**Log entry 312:** This is an email sent from FFR's president and CEO on August 13, 2012 to attorneys and another FFR officer. Although the email was sent to attorneys, it does not disclose anything governed by the attorney-client privilege. Rather, the email only says that it is attaching documentation for an upcoming conference call without disclosing the subject matter of the documentation or the conference call. Thus, it is not privileged, and we order FFR to produce the document. *See Towne Place Condo. Ass'n v. Phila. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 895 (N.D. Ill. 2018) ("Merely communicating with a lawyer or copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication or attachment into a privileged one, even if the otherwise non-privileged communication was at the behest of the lawyer"); *McCullough v. Fraternal Order of Police, Chi. Lodge 7*, 304 F.R.D. 232, 237 (N.D. Ill. 2014) ("[S]imply copying a lawyer on an otherwise nonprivileged communication will not transform the non-privileged document into a privileged one").

**Log entry 313:** This is the attachment to the August 13, 2012 email corresponding to log entry 312. It is a 27-page collection of emails sent among various FFR employees. FFR has withheld it on the basis that it was "prepared for the purpose of requesting legal analysis and advice from counsel regarding product samples legal strategy" (Def.'s 2d Am. Priv. Log at 48), and it does appear that the emails were collected and sent to attorneys for discussion at an upcoming conference call.

However, that does not make the email attachment privileged. The emails are communications between various FFR employees—none of whom are attorneys—and none of the communications say anything touching upon the need or desire for legal analysis or advice. True, the attachment contains some markings that presumably identify certain emails that are particularly relevant, but these markings do not rise to the level of a communication meant to be protected by

the attorney-client privilege. In short, the emails themselves do not contain anything that could be reasonably deemed to be privileged, and non-privileged documents do not become privileged simply because they are sent to an attorney. *See Towne Place Condo. Ass'n*, 284 F. Supp. 3d at 895; *McCullough*, 304 F.R.D. at 237; *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *5 (N.D. Ill. Nov. 28, 2006) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a privileged communication with the attorney"). We order FFR to produce the document corresponding to log entry 313.

**Log entry 366 (redaction to FFR018057):** FFR describes this redaction as concealing information that "reflect[s] legal analysis and advice of counsel regarding intellectual property analysis and strategy" (Def.'s 2d Am. Priv. Log at 55). The redacted information does not do so; it merely identifies, as part of the agenda for a meeting, a current challenge that involves intellectual property. FFR must produce FFR018057 without redaction.

**Log entries 410 (redactions to FFR018530) and 528 (redactions to FFR019029):** These entries correspond to three redactions applied to two versions of a product development update document. FFR describes these redactions as protecting "legal analysis and advice of counsel regarding intellectual property strategy, analysis, issues and activities" (Def.'s 2d Am. Priv. Log at 67, 87).

FFR must remove the first redaction to both documents, which is under the "Project Missed/Delayed Opportunity" section. The redacted information does not reflect legal analysis or advice, and it is similar to many other redactions that we are requiring FFR to remove. FFR must also remove the third redaction to both documents, which is under "Patent Issues and Activities." The redacted information merely reports the status of certain patents and patent applications; it does not, in contrast, contain any legal analysis of those patents and patent applications or render

any legal advice based on the status of those patents and applications. FFR, however, need not remove the second redaction to both documents, which is located under "16. PZSS Slow Feed Pusher." The redacted information here reflects legal advice or analysis and is properly redacted on the basis of attorney-client privilege.

**Log entry 566:** This document is an unmarked, publicly-available patent application publication. The document itself is not a request for or transmission of legal advice, and it contains no attorney notes or other markings that could reasonably constitute an attorney-client communication. Nor is the document privileged simply because it is attached to another purportedly privileged communication. *Muro*, 2006 WL 3422181, at *5. Thus, the document corresponding to log entry 566 is not privileged, and we order FFR to produce it.

**Log entry 682 (redactions to FFR038099):** [13] FFR identifies this document as a September 16, 2015 email communication from Mike Brinkman to Thad Brej (Def.'s 2d Am. Priv. Log at 102), but, in fact, the document is an email chain consisting of three emails. The redacted portion at issue is found in the first email of this chain, which was sent on September 10, 2015. FFR describes the redacted portion as "reflecting legal analysis and advice of counsel regarding intellectual property analysis" (*Id.*).

We disagree. The September 10, 2015 email summarizes what happened at a meeting held that day among several FFR employees—Greg Bird, Shane Obitts, Mark Crawford, Mike Brinkman, Thad Brej, and Lance Hutt—so presumably the redacted information represents something that was done or discussed by these individuals during the meeting. But none of these

---

[13] The document provided by FFR for log entry 682 has a Bates number (FFR052540) that differs from the Bates number identified for log entry 682 in FFR's latest privilege log (FFR038099). We understand that FFR052540 is a colorized version of FFR038099; thus, the two documents and redactions are substantively the same.

individuals are attorneys (Def.'s 2d Am. Priv. Log, at "Names and Capacities of Persons on FFR's Second Amended Privilege Log"), and there is no indication from the document that the redacted information was relayed to the group by an attorney. Rather, it appears that the meeting attendees themselves carried out the discussion and activity that has been redacted. FFR must remove the redaction corresponding to log entry 682.

**Log entry 814 (redaction to FFR079633):** This log entry relates to information redacted from an operations meeting document. FFR identifies the author as Suzanne Jakubec, who is the CEO's executive assistant, and describes the redacted portion as "reflecting legal analysis and advice of counsel regarding intellectual property issues and activities" (Def.'s 2d Am. Priv. Log at 109; *id.*, "Names and Capacities of Persons on FFR's Second Amended Privilege Log," at 2).

The redaction is improper. Even if FFR showed that the redacted information was provided by an attorney—which it has not done, as the author of the document is not an attorney—the information merely reports the status of certain patents and patent applications. It does not contain any legal analysis of those patents and patent applications or render any legal advice based on the status of those patents and applications. FFR must produce FFR079633 without redaction.

**Log entry 856 (redactions to FFR048378):** This entry corresponds to redactions applied to a Strategic Growth Planning Meeting presentation authored by Paul Bloom, an FFR employee who is not an attorney (Def.'s 2d Am. Priv. Log at 112; *id.*, "Names and Capacities of Persons on FFR's Second Amended Privilege Log," at 1). FFR characterizes the redacted information as "reflecting legal analysis and advice of counsel regarding intellectual property strategy" (Def.'s 2d Am. Priv. log at 112).

We agree with this characterization with respect to the redaction on page 77 under "Costs to exit:," and FFR can maintain this redaction. But FFR must remove all other redactions to

FFR048378, *i.e.*, the nearly full-page redaction on page 64 and the redaction to the first bullet point under "Steps to exit:" on page 77. The information redacted on page 64 merely describes a product or project of FFR's without disclosing any legal analysis or advice, and the information redacted on page 77 under "Steps to exit" is at a level of detail similar to what one would expect on a privilege log. In short, neither of these latter two redactions conceals information protected by the attorney-client privilege.

**Log entry 860:** FFR identifies this document as a February 4, 2016 email communication from Mike Verdile, FFR's vice president of sales and a non-attorney, to several other non-attorney FFR employees (Def.'s 2d Am. Priv. Log at 113; *id.*, "Names and Capacities of Persons on FFR's Second Amended Privilege Log"). In actuality, the document is an email chain consisting of three emails, none of which contains attorney-client privileged information. The earliest email is from an attorney (Jay Moldovanyi) to FFR employees, but it merely identifies the document attached to the email and refers to the subject matter of a prior report from counsel without getting into the details of any legal advice. The latter two emails involve no attorneys, and there is no indication that these emails were sent as "prepar[ation] for the purpose of requesting additional legal analysis and advice of counsel regarding intellectual property review and strategy" (Def.'s 2d Am. Priv. Log at 113). FFR must produce the emails corresponding to log entry 860.

**Log entry 869:** This entry corresponds to (1) an email with attachments sent by an attorney, William Berndt, to Mr. Burson, another attorney, and other FFR employees, and (2) Mr. Burson's forwarding of the email and attachments to his executive assistant. The first email reflects legal advice from Mr. Berndt, and the second email implicitly does so as well. We find FFR's assertion of attorney-client privilege appropriate for this log entry.

**Log entries 977 and 984:** The document for log entry 977 is an email communication from Mr. Moldovanyi and the document for log entry 984 is a communication sent from a law firm. FFR accurately describes both these documents as "reflecting legal analysis and advice of counsel regarding patent issues" (Def.'s 2d Am. Priv. Log at 122). FFR's assertion of attorney-client privilege over these two documents is proper.

**Log entry 995 (redactions to FFR052558):** This document is a spreadsheet titled "FFR-SDI Charter Template." FFR identifies Jerry Szpak, a senior project engineer at FFR who is not an attorney, as the author of the redacted information, but it does not identify a recipient (Def.'s 2d Am. Priv. Log at 123; *id.*, "Names and Capacities of Persons on FFR's Second Amended Privilege Log," at 3). The redacted information at issue falls under different sections, which are titled "Project Description (business case)," "Project Deliverables," "Project Scope," "Project Risks / Additional Comments," and "Key Project Milestones." FFR describes the redacted information as "privileged and confidential [information] requesting legal analysis and advice from counsel regarding patent issues and Power Zone Pre-Set" (Def.'s 2d Am. Priv. Log at 123).

The information redacted from FFR052558 is not privileged. *First*, there is no indication that the information was sent to or intended for review by an attorney, so FFR has not shown that it is a "request[]" for "legal analysis and advice *from counsel*." *Second*, although the redacted information refers to legal terminology, it does not reflect legal analysis or advice. To the contrary, the legal references are so high level that they are like the descriptions that would appear in a privilege log without waiving any applicable privilege. Thus, we order FFR to remove its redactions from FFR052558.

**Log entry 1033 (redactions to FFR079686):** FFR has redacted several entries in a 243-page "New Product Flow" spreadsheet on the basis that they disclose a "request for legal analysis

and advice of counsel regarding patents" (Def.'s 2d Am. Priv. Log at 125). The redacted information does not implicate the attorney-client privilege. For one thing, there is no indication that the spreadsheet was sent to or intended for review by an attorney, so FFR has not shown that it is a "request for legal analysis and advice *of counsel*." As is the case with log entry 995, FFR has not identified a recipient for the redacted information, let alone an attorney recipient who would potentially give legal analysis and advice about it (*Id.*). Moreover, the redactions, which are all found in a "Product Status" column, merely indicate that as part of a certain product's development, either a particular attorney is to review a particular set of patents or a patent needs to be reviewed by an attorney. Identifying the fact (but not the substance) of an attorney's patent review as a step in product development does not disclose the type of information protected by the attorney-client privilege. Thus, FFR must produce FFR079686 without any redactions.

**Log entry 1048 (redaction to FFR052084):** This entry represents a redaction on a document that was sent to several individuals from Olympus Partners—Robert Morris, Jim Conroy, Pete Tedesco, and Matt Boyd (Def.'s 2d Am. Priv. Log at 126). As discussed above, the presence of Messrs. Morris, Tedesco, and Boyd, *i.e.*, Olympus Partners employees who are not also board members or officers of FFR, waives any attorney-client privilege that may have applied to the redacted information. FFR must produce FFR052084 without redaction.

**Log entries 1055 (redaction to FFR052282), 1066 (redaction to FFR052415), 1083 (redaction to FFR052576), 1085 (redaction to FFR052562), and 1087 (redaction to FFR052566):** All these entries correspond to a redaction found under a section titled "Professional Fees" in an income statement regarding product development. The redacted information in each document is similar, and the redactions corresponding to log entries 1066, 1085, and 1087 conceal the same exact information (just in three different documents). FFR describes the redacted

28

information in these log entries as "privileged and confidential [information] reflecting legal analysis and advice of counsel regarding" patents or intellectual property issues and activities (Def.'s 2d Am. Priv. Log at 126-28).

None of the information redacted by FFR with respect to these log entries is protected by the attorney-client privilege. *First*, the redacted information identifies a law firm and a category of engineering and legal expenses or services, both followed by a monetary amount. But the identity of a client ordinarily "does not come within the scope of the [attorney-client] privilege," *BDO Seidman*, 337 F.3d at 811, so the identities of the attorneys working for FFR are likewise not privileged. *See also Nat'l Union Fire Ins. Co. v. Cont'l Ill. Grp.*, Nos. 85 C 7080, 7081, 1988 WL 79521, at *2 (N.D. Ill. July 22, 1988) (the identification of "persons who participated in legal work" does "not fall within attorney-client privilege"). In fact, FFR's privilege log already identifies several law firms that employ the attorneys with which its employees have communicated, including the name of the law firm that was redacted in the documents at issue (*see* Def.'s 2d Am. Priv. Log, at "Names and Capacities of Persons on FFR's Second Amended Privilege Log").

*Second*, the charges for a law firm's services and the amount of other services or expenses (even if, in part, legal) are not privileged pieces of information. *See Leonard-Allen*, 739 F.3d at 953 ("[I]nformation about attorneys' fees . . . falls outside the scope of the [attorney-client] privilege because fees are incidental to the substance of representation"); *Pandick, Inc. v. Rooney*, No. 85 C 6779, 1988 WL 61180, at *2 (N.D. Ill. June 3, 1988) (finding that attorney time-sheets and billing statements that did not disclose "[t]he substance of the work performed or matter discussed" were not privileged); *Phillips v. Nexstar Broad. Grp., Inc.*, No. 3:12-CV-69-RLY-

WGH, 2013 WL 840789, at *1 (S.D. Ind. Mar. 6, 2013) (noting that most courts addressing the issue have found that billing statements for legal services are discoverable).

*Third*, the remaining statements simply comment on the preceding monetary amounts and other expenses. We see nothing in these statements that can be reasonably read as disclosing a lawyer's thinking or a communication for the purpose of receiving legal advice. *See Bey*, 772 F.3d at 1101; *Leonard-Allen*, 739 F.3d at 953. Thus, we order FFR to remove its redactions from FFR052282, FFR052415, FFR052576, FFR052562, and FFR052566.

**Log entry 1068 (redactions to FFR052634):** This entry corresponds to five redactions applied to an "Acquisition Candidates" spreadsheet that was sent by Paul Bloom of FFR to Messrs. Conroy, Haddad, and Burson, none of whom are attorneys (Def.'s 2d Am. Priv. Log at 127; *id.*, "Names and Capacities of Persons on FFR's Second Amended Privilege Log"). FFR describes the redactions as "requesting legal analysis and advice from counsel regarding patents" (Def.'s 2d Am. Priv. Log at 127).

These redactions are improper as well. The document was not sent to an attorney, so it is unclear how it can contain a "request[]" for "legal analysis and advice *from counsel*." More substantively, though, none of the redacted portions reflect anything that could be reasonably construed as a request for legal analysis or advice. Thus, we order FFR to remove its redactions from FFR052634.

## IV.

Now, we turn to the issues that are unique to FFR's motion.

## A.

At the outset, we address RTC's assertion that many of the log entries challenged by FFR correspond to documents that "are not relevant to any issue in this case nor responsive to any FFR

30

document request" (Pl.'s Rule 37.2 Resp. at 1). For instance, RTC contends that many of its 13,000-plus log entries regarding "patent prosecution" relate to documents that are neither relevant to this case nor responsive to FFR's document requests and were only logged as "a direct result of FFR's overbroad search terms" (*Id.* at 6; 8/13/19 Tr. (Part 2) at 11:7-16, 107:22-108:4). RTC repeats the same refrain about relevance and responsiveness for many of the other log entries challenged by FFR (Pl.'s Rule 37.2 Resp. at 3-5, 7, 10, 13, 15; *e.g.*, 8/13/19 Tr. (Part 2) at 45:19-24, 52:11-15, 89:13-23, 98:9-17, 101:7-18).[14] Thus, according to RTC, a significant number of its more than 16,000 privilege log entries relate to irrelevant, non-responsive documents.

This is unacceptable. A privilege log should identify only *relevant* privileged documents that would otherwise be produced *in response to discovery. See* Fed. R. Civ. P. 26(b)(5)(A) (requiring a privilege log for withheld information that is "otherwise discoverable"); *see also Makowski vs. SmithAmundsen LLC*, No. 08 C 6912, 2012 WL 1634832, at *3 (N.D. Ill. May 9, 2012) (noting that because non-responsive documents do not need to be produced in litigation, it does not matter whether they are privileged). Otherwise, just as a litigant might attempt to "bury" relevant (but perhaps damaging) documents by producing them with a large number of irrelevant documents, a party could potentially obscure relevant privilege log entries by surrounding them with irrelevant log entries. Moreover, larding a privilege log with entries for irrelevant documents makes the receiving party unnecessarily review irrelevant log entries to determine whether they are worth challenging, thereby distracting it from focusing on the entries for documents that actually may be relevant to the case. As shown by RTC's Rule 37.2 response, FFR's challenges to

---

[14] These are RTC's log entries 22, 155, 309, 329, 330, 353, 386-90, 442, 472, 473, 634, 681, 728, 740, 756, 780, 812, 814, 875, 917-26, 1242, 1440, 1634-36, 1804-11, 1946, 1981, 2324, 2507, 2831, 3104, 3106, 3113, 3125, 3128, 3129, 3918, 3919-63, 13485, 14466, 14800, 14889, 15427, 15469, and 15799-800.

dozens of log entries would have been obviated had RTC identified only relevant, responsive documents on its privilege log from the start.

Nor can RTC blame the breadth of FFR's search terms. To begin with, RTC agreed to the search terms of which it now complains (8/13/19 Tr. (Part 2) at 11:7-16, 112:24-113:6). If RTC deemed FFR's search terms too broad and found that they captured too many irrelevant documents, the solution was to confer with FFR about it (doc. # 134-10: Stipulated Agreement Regarding Certain Aspects of Discovery, at ¶ 1(b)(vii) ("The Parties agree to confer, if needed, after email searching, collection, and/or production begins to discuss any anomalies in the search results such as an unreasonably large number of search results")). In any event, RTC well knows that search terms are never so precise that they allow a party to surgically identify only the documents that are responsive and relevant. Rather, search terms serve the function of reducing the number of documents that are retrieved from a large database and that must then be reviewed for responsiveness and relevance.

Thus, RTC should have first evaluated the relevance and responsiveness of the documents "hit" by the search terms before putting them on its log, as it was permitted to do under the parties' agreement:

> The Parties agree that the producing Party may screen email hit results and non-email ESI and hard copy files for responsiveness, relevance, privilege or other protection, and confidentiality before producing such email, non-email ESI, or hard copy files. The Parties may withhold documents based on responsiveness, relevance, and privilege or other protection.

(Stipulated Agreement Regarding Certain Aspects of Discovery, at ¶ 2). RTC's counsel admitted that it did not do so for at least some of the logged documents—"[s]ome of those documents appeared on RTC's log based on the overbroad search terms and *where we were not reviewing for relevance* with respect to the documents that were put onto the log" (8/13/19 Tr. (Part 2) at 11:17-

12:5 (emphasis added))—and based on our review of the record (including the sheer number of entries on RTC's privilege log), we are concerned that this failure affects more than just a handful of documents.

Based on the foregoing, we find that RTC has forfeited any responsiveness or relevance objection to producing documents and communications it has identified on its privilege log. *See Sansone v. Brennan*, 917 F.3d 975, 983 (7th Cir. 2019) ("Forfeiture occurs when a party fails to make an argument because of accident or neglect"); *United States v. Doyle*, 693 F.3d 769, 771 (7th Cir. 2012) ("Forfeiture occurs by accident, neglect, or inadvertent failure to timely assert a right"). Applying the rulings set forth in this Memorandum Opinion and Order, RTC shall produce any non-privileged document or communication that it has identified on its privilege log, regardless of whether RTC now contends that the document or communication is non-responsive and/or irrelevant. In accordance with section III.D above, RTC must inform FFR of the Bates numbers that correspond to the log entries for these previously withheld or redacted documents. RTC shall then serve a privilege log containing only entries that correspond to documents and communications that it is withholding on the basis of a privilege.

**B.**

FFR moves to compel RTC to produce withheld documents that were shared with third parties (Def.'s Mot. at 3-4). For ease of reference, we have grouped these documents, which have been submitted for our *in camera* review, into four categories.

**Category 1 (log entries 1242, 1946, 2831):** These are communications that RTC describes in its Rule 37.2 response as "[e]mail[s] at the direction of legal counsel to consultant providing information for the purpose of obtaining consultant's assistance with trial preparation re:" potential or pending litigation (Def.'s Mot. at 3-4; Pl.'s Rule 37.2 Resp. at 4). RTC describes entry 1242 as

a January 9, 2008 email sent by Richard Nathan (RTC's CEO) to William Spizman; entry 1946 as a September 19, 2016 email sent by Pierre-Alain Weill to Mr. Nathan, and entry 2831 as an October 13, 2016 email sent by Ed Tchai to Mr. Nathan (Pl.'s Orig. Priv. Log at 83, 130, 200).

In its original privilege log, RTC identified only attorney-client privilege as a basis for withholding these documents, and in its Rule 37.2 Response, RTC did not indicate that it was adding work product as a basis for withholding (Pl.'s Orig. Priv. Log at 83, 130, 200; Pl.'s Rule 37.2 Resp. at 4). Nonetheless, at the parties' subsequent meet and confer, RTC's counsel suggested that it was withholding these documents because of *both* attorney-client privilege and work product (8/13/19 Tr. (Part 2) at 82:8-87:23), and RTC added work product assertions in the portions of the privilege log we received with its submission of documents for *in camera* review. RTC's counsel further specified that the Category 1 documents were communications with consultants or experts with respect to trial preparation that were protected from disclosure under Federal Rule of Civil Procedure 26 (*Id.* at 84:22-85:21, 86:24-87:13). RTC contends that, in any event, these communications are not relevant (*Id.* at 89:13-23; Pl.'s Rule 37.2 Resp. at 4).

The only timely assertion of privilege made by RTC was attorney-client privilege, and based on our *in camera* review, this privilege does not apply because none of the documents reflect a "lawyer's thinking" or a communication "made for the purpose of eliciting the lawyer's professional advice or other legal assistance." *Leonard-Allen*, 739 F.3d at 953. Moreover, as already discussed, RTC has forfeited any claim that the documents it logged are not relevant to this litigation. Accordingly, RTC must produce the Category 1 documents.

**Category 2 (log entries 3918-3963):** This category consists of an email sent by Jamie Bauer to John Ward at RTC (log entry 3918) and attachments to that email (log entries 3919-3963) (Def.'s Mot. at 4; Pl.'s Orig. Priv. Log at 272-74; Pl.'s Rule 37.2 Resp. at 3). According to RTC,

Mr. Bauer is a "joint inventor with RTC employees on patents unrelated to this case" and Mr. Bauer and RTC "were jointly prosecuting the patents and developing prosecution strategies with Banner & Witcoff and Brown & Michaels PC attorneys" (Pl.'s Rule 37.2 Resp. at 3). RTC contends that the documents in this category are neither "relevant to any issue in this case nor . . . responsive to any of FFR's Requests for Production" (*Id.*). Nonetheless, RTC agreed to update its privilege log as follows:

- Log entry 3918: "Non-responsive email chain providing information for the purpose of obtaining legal advice of attorney Joseph J. Berghammer from Banner & Witcoff, Ltd. re: patent prosecution"

- Log entries 3919-3963: "Attachments to non-responsive email chain providing information for the purpose of obtaining legal advice of attorney Joseph J. Berghammer re: patent prosecution"

(*Id.*).

There is no indication that Mr. Bauer is employed or retained by RTC in any manner; so, despite his alleged joint inventor status with RTC employees, he is a third party. The general rule is that a client (here, RTC) cannot deem as privileged a communication involving a third party because the third party's involvement negates the attorney-client privilege. *See Burden-Meeks*, 319 F.3d at 899 ("Knowing disclosure to a third party almost invariably surrenders the [attorney-client] privilege with respect to the world at large"); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731 (N.D. Ill. 2014) ("Since the purpose behind the attorney-client privilege is to encourage full disclosure to one's lawyer by assuring confidentiality, disclosure to a third party that eliminates that confidentiality constitutes a waiver of the privilege"); *see also* Pl.'s Rule 37.2 Ltr. at 3. There are exceptions to this general rule, but RTC's Rule 37.2 response does not cite any case law or make any legal argument to support the application of any such exception to Mr. Bauer

35

(Pl.'s Rule 37.2 Resp. at 3, 5). In short, RTC has failed to establish that its attorney-client privilege encompasses Mr. Bauer. Thus, we order RTC to produce the Category 2 documents.

**Category 3 (log entries 13485, 14466, 14889, 15427):** These are emails (or email chains containing emails) sent to Jamie Bauer (Def.'s Mot. at 4; Pl.'s Rule 37.2 Resp. at 5; Pl.'s Orig. Priv. Log at 1028, 1101, 1133, 1172). As with the Category 2 documents, RTC contends that the Category 3 documents are neither responsive nor relevant but has offered to update its privilege log to reflect their non-responsive and irrelevant nature (Pl.'s Rule 37.2 Resp. at 5).

RTC must produce the Category 3 documents for the same reasons it must produce the Category 2 documents. Without a showing by RTC that an exception applies, Mr. Bauer's presence on the communications destroys any attorney-client privilege RTC could claim. Thus, RTC must produce the Category 3 documents.

**Category 4 (log entry 15469):** This is an email from Al Menz that RTC contends "is not relevant to any issue in this case nor responsive to any of FFR's Requests for Production" (Def.'s Mot. at 4; Pl.'s Orig. Priv. Log at 1174; Pl.'s Rule 37.2 Resp. at 5). Even so, RTC has agreed to update its description of this document as follows: "Non-responsive email chain reflecting legal advice from Banner & Witcoff, Ltd. re: patent prosecution of yogurt merchandiser system" (Pl.'s Rule 37.2 Resp. at 5). At the parties' meet and confer, RTC's counsel asserted that Mr. Menz was a joint inventor working with RTC on a yogurt merchandiser system patent that Banner & Witcoff prosecuted (8/13/19 Tr. (Part 2) at 98:18-100:7).

The Category 4 document involving Mr. Menz falls into the same camp as the Category 2 and Category 3 documents involving Mr. Bauer. There is no indication that Mr. Menz is employed or retained by RTC in any manner, so he is a third party regardless of his alleged status as a joint inventor. As with Mr. Bauer, RTC's Rule 37.2 response does not cite any case law or make any

legal argument to support extending RTC's attorney-client privilege over Mr. Menz (Pl.'s Rule 37.2 Resp. at 5). RTC must produce the Category 4 document as well.

## C.

FFR also moves to compel the production of documents "that, from the information available to FFR, do not appear to be subject to a proper claim of privilege" (Def.'s Mot. at 2). The challenged documents, which have been provided for our *in camera* review, correspond to RTC's log entries 1559, 1588, 1608, 3918-3963, and 4632 (*Id.* at 2-3; *see also* Def.'s Rule 37.2 Ltr. at 3-5, 7). We have already ordered RTC to produce the documents corresponding to log entries 3918-3963 because Mr. Bauer's presence waives any privilege that may have attached, so we need not address those entries again.

**Log entries 1559 (redaction to RTC0177383) and 1588 (redaction to RTC0177486):** These entries represent a redacted portion of an email that purportedly obscures "legal advice of attorney Joseph J. Berghammer from Banner & Witcoff, Ltd. re: Southern Imperial intellectual property" (Pl.'s Rule 37.2 Resp. at 2). Entry 1588 corresponds to a May 2, 2011 email from Richard Nathan to Steve Hardy, and entry 1559 corresponds to both the May 2 email from Mr. Nathan and a May 3, 2011 email Mr. Hardy sent to Mr. Nathan in response. The redaction is found in the May 2 email; RTC has not redacted the May 3 email in any way.

We have reviewed the documents and find that the redacted portion reflects Mr. Berghammer's thinking about Southern Imperial intellectual property and also appears to contain an implicit request for information on this subject. As such, this portion falls under the attorney-client privilege. We deny FFR's motion with respect to these entries.[15]

---

[15] In discussing entry 1559 at the parties' meet and confer, FFR also raised a "sword/shield" argument (8/13/19 Tr. (Part 2) at 32:7-34:19). *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 839 (N.D. Ill.

**Log entries 1608 (redactions to RTC0177494) and 4632 (redactions to RTC0146963):**

These entries represent redacted portions that purportedly obscure an "email chain providing information for the purpose of obtaining legal advice and reflecting legal advice of attorneys from Banner & Witcoff, Ltd. re: patent prosecution" (Pl.'s Rule 37.2 Resp. at 2-3). Entry 1608 corresponds to an email chain consisting of five emails sent between August 11 and August 12, 2011, and entry 4632 corresponds to the first three of these five emails.

Based on our review of the documents, we disagree with RTC's characterization of the redacted information at issue. None of the authors or recipients of the emails at issue are attorneys, and although the redacted portions of the conversations do touch on legal issues related to patent prosecution, there is no indication that these conversations were carried out at the behest of the attorneys from Banner & Witcoff or to obtain information for these attorneys. Nor is there any indication that the conversations were merely relaying legal advice from these attorneys. Notably, none of the redacted portions refer to Banner & Witcoff or any particular attorney. We grant FFR's motion with respect to log entries 1608 and 4632 and order RTC to produce RTC0177494 and RTC0146963 without any redactions.

**D.**

Finally, FFR moves to compel RTC to supplement its privilege log "to provide 'To,' 'CC,' and 'BCC' information for each document for which that information is available" (Def.'s Mot. at 5). FFR's Rule 37.2 letter identified "non-limiting examples" of the entries for which it wanted the aforementioned recipient information (Def.'s Rule 37.2 Ltr. at 16-17). In response, RTC

---

2006) ("[A]ttorney-client privilege cannot be used as both a sword and a shield"). FFR did not raise this argument in its Rule 37.2 letter (Def.'s Rule 37.2 Ltr. at 3), and even though RTC amended its description for entry 1559 after FFR served its Rule 37.2 letter (Pl.'s Rule 37.2 Resp. at 2), nothing about this amended description made the "sword/shield" argument any more applicable or relevant to the document at issue. Thus, FFR has forfeited this argument.

supplemented its log to provide this information, but it did so only for the specific entries identified by FFR in its Rule 37.2 letter (Pl.'s Rule 37.2 Resp. at 7; 8/13/19 Tr. (Part 2) at 121:24-126:7). As shown by the parties' subsequent meet and confer, RTC contends that FFR waived its argument for any log entry not specifically identified in FFR's Rule 37.2 letter and that it (RTC) "had no way of knowing which – what other log entries FFR was taking issue with" (8/13/19 Tr. (Part 2) at 122:17-123:10, 125:18-126:3)

We disagree. FFR raised an easily discernable global issue—missing recipient information in the To, CC, or BCC fields. For any particular log entry, only RTC's counsel knows whether this information is unavailable or, alternatively, available but not identified on RTC's privilege log. It is unnecessary for FFR to list every potentially incomplete log entry to support the simple proposition that RTC should identify the recipient(s) of a withheld document or communication. Indeed, doing so is one of the most basic requirements of a privilege log. *See* M.J. Schenkier's Case Procedures, Privilege Logs (explaining that any privilege log should include "the name and capacity of each individual from whom or to whom a document and any attachments were sent (including which persons are lawyers)").

Thus, we order RTC to supplement its entire privilege log to add, where applicable, any missing recipient information. We order FFR to do the same; in our review of the sample documents provided by FFR for *in camera* review, we noticed more than one instance where FFR's privilege log entries do not list the recipient of the withheld document or communication at issue. In ordering the parties to provide this information, we emphasize that it should not take the service of multiple log iterations to identify a withheld document's recipient(s) or their job titles for the first time. This is information that a party must assess and know at the outset before it can even assess whether a document is privileged. *See Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D.

Ill. 2012) ("[I]f the recipient(s) at an e-mail address cannot be adequately identified, it is impossible to determine whether the privilege is properly asserted").

<h2 align="center">V.</h2>

We close by reminding the parties that the rulings contained in this Memorandum Opinion and Order are not limited to the specific log entries that have been discussed in connection with the parties' motions. Both RTC and FFR should re-review their respective privilege logs and the underlying documents and decide whether, given our rulings today, any documents should be produced. We also remind the parties that producing documents in response to this order does not waive the attorney-client privilege, as it is a production pursuant to a court order. Furthermore, we have a Rule 502(d) order in this case, which means that "[t]he production of privileged or work-product protected documents, electronically stored information or other information . . . is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding" (Modified Protective Order, at ¶ 5(a)). *See* Fed. R. Evid. 502(d) ("A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding").

## CONCLUSION

For the foregoing reasons, we (1) grant in part and deny in part RTC's motion to compel (doc. # 226); and (2) grant in part and deny in part FFR's motion to compel (doc. # 232). By October 18, 2019, the parties shall submit to the Court agreed-upon deadlines for the production and review required of each party by this Memorandum Opinion and Order.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

DATE: October 8, 2019