IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RTC INDUSTRIES, INC., ) | |
| ) | Case No. 17 C 3595 |
| Plaintiff, ) | |
| ) | District Judge Pacold |
| ) | |
| v. ) | Magistrate Judge Schenkier |
| ) | |
| FASTENERS FOR RETAIL, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On December 26 and 27, 2019, defendant Fasteners for Retail, Inc. ("FFR") filed four motions to compel discovery from plaintiff RTC Industries, Inc. ("RTC"). This Opinion and Order resolves three of these motions:

1. FFR's motion to compel RTC to produce a report from its ERP financial system showing data for all merchandise display system sales from June 1998 to May 2001 (doc. # 345: FFR Mot. # 1);

2. FFR's motion to compel RTC to prepare and produce a knowledgeable witness for a continued Rule 30(b)(6) deposition of RTC and for fees (doc. # 349: FFR Mot. # 2); and

3. FFR's motion to compel RTC to produce or make available for inspection competitive products (doc. # 354: FFR Mot. # 3).

For the following reasons, we grant each motion in part.[1]

I.

We first address FFR's motion to compel RTC to produce a report from RTC's ERP financial system showing all sales data for all of RTC's merchandise display systems from June

---

[1] As we have done with prior orders and opinions issued in this case, if we must refer to a sealed document, we attempt to do so without revealing any information that could be reasonably deemed confidential. To the extent we discuss confidential information, however, we have done so because it is necessary to explain the path of our reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

1998 to May 2001 (FFR Mot. # 1 at 1; doc. # 346, at 2-12: FFR Ltr. # 1, at 1). Such a report would include, but not be limited to, sales data for RTC's ProfitPusher line of products.[2]

FFR's motion arises out of RTC's production of documents relating to RTC's sale of ProfitPusher 2 products. RTC produced documentation indicating that it sold ProfitPusher 2 in 1999 (FFR Ltr. # 1 at 4-6; FFR Ltr. # 1, Exs. 3-5). But RTC also produced a spreadsheet that identified the first ProfitPusher 2 sale as occurring in November 2000 (FFR Ltr. # 1 at 7). Later, RTC replaced that spreadsheet with another spreadsheet that identified the earliest sale of ProfitPusher 2 as occurring in February 2002 (*Id.* at 7-8). RTC relies upon the February 2002 date and disclaims the 1999 and November 2000 dates (doc. # 346-1, at 2-13: RTC Resp. # 1, at 3-6). Given these inconsistencies, however, FFR wants to independently review all of RTC's merchandise display system sales from June 1998 through May 2001 so that it can determine for itself the dates of first sale for *both* ProfitPusher 2 and ProfitPusher 1 (*see* FFR Ltr. # 1 at 8).

FFR's request is much too broad. *First*, it would require RTC to provide financial information about products—namely, all non-ProfitPusher merchandise display systems—that have no relation to the case. Indeed, FFR does not argue that this information is relevant. Rather, the breadth of FFR's request appears to be driven by FFR's lack of trust in RTC's ability or willingness to search for and produce pre-May 2001 financial information about the relevant ProfitPusher products.

Allowing FFR's lack of trust to justify its overly broad request is a slippery slope. In federal litigation, litigants generally search and review their own documents to determine which documents must be produced as relevant and responsive, and courts presume that they do so in

---

[2] There are three potentially relevant versions (or generations) of ProfitPusher: ProfitPusher 1, ProfitPusher 2, and ProfitPusher 3. FFR does not contend that it needs the requested June 1998-May 2001 sales data to determine anything about ProfitPusher 3.

2

accordance with their legal obligations. To depart from this approach would require a strong showing suggesting that a litigant and its attorneys have not complied, or will not comply, with these obligations. Otherwise, a litigant could gain access to documents it has no right to see by merely professing a distrust in its opponent. FFR has not established that RTC's prior document review and production have been so lacking or inadequate that we should allow FFR to view financial information that has no bearing on this case so it can decide for itself what information it deems relevant.

*Second*, we are not persuaded by FFR's assertion that pre-May 2001 sales information about ProfitPusher 1 is potentially relevant to the validity of RTC's patent claims based on an on-sale bar argument (FFR Ltr. # 1 at 8-9). RTC's first sale of ProfitPusher 1 is potentially relevant to an on-sale bar invalidity argument only to the extent ProfitPusher 1 embodies or otherwise discloses an asserted patent claim. *See Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008) ("When the asserted basis of invalidity is an on-sale bar, the court should determine whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention"). Here, as FFR admits, RTC has not expressly asserted that its ProfitPusher 1 product embodies any of its asserted patent claims (FFR Ltr. # 1 at 9). True, RTC has marketed its ProfitPusher 2 product as "ProfitPusher®," and it has also, for marking purposes, identified patents it contends are embodied by ProfitPusher 2 as protecting "ProfitPusher®" (*Id.*; FFR Ltr. # 1, Exs. 7, 16-17). But it is not clear from the parties' submissions that "ProfitPusher®" refers solely to ProfitPusher 1, if at all. In any event, this evidence is not compelling enough to suggest that ProfitPusher 1 potentially embodies any particular claim of RTC's asserted patents. Thus, on this record, we are not convinced that RTC should be made to produce sales information about ProfitPusher 1.

At the same time, RTC should produce documentation showing the earliest sale of ProfitPusher 2. Because RTC asserts that ProfitPusher 2 embodies certain of its patent claims (*see* FFR Ltr. # 1, Ex. 7), its first sale of that product—if made too early—could potentially invalidate those claims under 35 U.S.C. § 102. Although RTC produced a document indicating that ProfitPusher 2 was not sold until February 2002, the fact is that RTC also produced documents (created outside the context of this litigation) indicating that ProfitPusher 2 was sold much earlier, in 1999. Yet RTC did not search its financial database for ProfitPusher 2 sales information from 1999 (RTC Resp. # 1, Ex. 28 ("11/19/19 Bloom Dep.") at 168-69, 208-09). FFR is entitled to test RTC's asserted February 2002 first-sale date by seeing whether RTC's financial information shows pre-February 2002 (and, specifically, 1999) sales of ProfitPusher 2.

To that end, we order RTC to search and review its accounting and financial information for the time period sought by FFR (June 1998 to May 2001) to determine whether it sold or offered for sale any ProfitPusher 2 products during that time period. If there is any information or documentation showing such sales or offers for sale, RTC shall produce it to FFR within 21 days of this order. If there is no such information or documentation, RTC shall confirm as much to FFR within 21 days of this order.[3]

## II.

Next, we take up FFR's motion to compel RTC to prepare and produce a knowledgeable Rule 30(b)(6) witness to testify for another 5 hours and 9 minutes (FFR Mot. # 2 at 1). FFR's motion also seeks payment of its reasonable attorneys' fees incurred during certain breaks taken by RTC during the Rule 30(b)(6) deposition (*Id.*).

---

[3] We note that during the parties' December 20, 2019 meet and confer session, RTC offered to engage in a search and production similar to the one we now order (*see* doc. # 346-2: 12/20/19 Meet & Confer Tr. at 14, 30). FFR's acceptance of that reasonable proposal could have obviated this motion.

**A.**

On October 21, 2019, FFR issued a Rule 30(b)(6) notice to RTC containing 76 topics (doc. # 350, at 2-20: FFR Ltr. # 2, Ex. 1). On November 26, 2019, RTC offered two witnesses to testify on its behalf about those topics: Ken Bloom, RTC's CFO, and Richard Nathan, RTC's CEO (FFR Ltr. # 2 at 3; doc. # 350-1, at 2-19: RTC Resp. # 2, at 1). Mr. Bloom was designated to testify on five Rule 30(b)(6) topics (Topics 12, 13, 14, 15, and 57), and a portion of another topic (Topic 8); Mr. Nathan was designated to testify about the other portion of Topic 8 and the remaining 70 topics (*see* RTC Resp. # 2 at 1, 3-4; FFR Ltr. # 2, Ex. 7 ("11/26/19 Bloom Dep.") at 15-16).

Mr. Bloom's deposition started at 9:15 a.m. and ended at 12:09 p.m. (11/26/19 Bloom Dep. at 6, 66). FFR only deposed Mr. Bloom on the record for 1 hour and 9 minutes, however, as much of the time was taken up by breaks or attorney discussions (FFR Ltr. # 2, App'x A).[4] Even so, FFR's attorney did not state on the record that he needed any more time to question Mr. Bloom about the topics for which he had been designated (*e.g.*, 11/26/19 Bloom Dep. at 63-64, 66).

Mr. Nathan's deposition began at 1:16 p.m. (FFR Ltr. # 2, Ex. 9 ("11/26/19 Nathan Dep.") at 5). Mr. Nathan's deposition was also interrupted by long breaks and attorney discussions (FFR Ltr. # 2, App'x A). By the time Mr. Nathan's deposition concluded nearly five hours later, at 6:05 p.m., FFR had deposed Mr. Nathan on the record for only 2 hours and 40 minutes (*Id.*; 11/26/19 Nathan Dep. at 115). Thus, after a nearly nine-hour deposition day, FFR had only obtained approximately 3 hours and 49 minutes of Rule 30(b)(6) testimony (FFR Ltr. # 2, App'x A).

At roughly 5:55 p.m., FFR stopped questioning Mr. Nathan on the basis that Mr. Nathan was not adequately prepared for the deposition (FFR Ltr. # 2, App'x A; 11/26/19 Nathan Dep. at 107-08). FFR also noted that to continue questioning Mr. Nathan for the remainder of the allowed

---

[4] Our recitations of temporal durations are necessarily approximate. We also use 1 hour and 9 minutes as the duration for Mr. Bloom's deposition to be consistent with FFR's approximation.

5

deposition time (a little more than three hours) would make the deposition last until 9:00 or 10:00 p.m. (11/26/19 Nathan Dep. at 113-14). Thus, FFR's attorney proposed that Mr. Nathan's deposition be continued to a later time (*Id.* at 108-09, 113-14). RTC did not agree; it asserted that Mr. Nathan was reasonably prepared for all the topics for which he was designated (*Id.* at 109). RTC also objected to any continuation of the deposition because the parties agreed to that day for the Rule 30(b)(6) deposition, and "this was [FFR's] chance to take" the deposition (*Id.* at 111, 113-14).

### B.

FFR seeks a total of 5 hours and 9 minutes of additional deposition time with RTC's Rule 30(b)(6) witness(es). Three hours and 11 minutes of this duration represents the difference between the presumptive durational limit of a deposition pursuant to Federal Rule of Civil Procedure 30(d)(1) (7 hours), and the amount of testimony FFR already obtained from Messrs. Bloom and Nathan (3 hours and 49 minutes) (FFR Ltr. # 2 at 9-10). The remaining 1 hour and 58 minutes represents the amount of time FFR says it spent questioning Mr. Nathan about Rule 30(b)(6) topics for which he was inadequately prepared, namely Topics 9, 10, 24, and 73 (*Id.* at 11-17; FFR Ltr. # 2, App'x B). RTC resists making any Rule 30(b)(6) witness available and, unsurprisingly, asserts that it was FFR's conduct that prevented it from exhausting its seven hours of record time (*see generally* RTC Resp. # 2 at 1-15).

From our review of the deposition transcripts, both RTC and FFR are to blame for the inefficiencies in the depositions. For instance, each party had *three* attorneys attend Mr. Bloom's deposition in the morning (11/26/19 Bloom Dep. at 3, 6). At least one attorney from each side could have deposed and defended Mr. Nathan while Mr. Bloom's deposition was ongoing, which would have made it much easier for FFR to use up its seven-hour allotment in one day. We also

6

conclude that Mr. Nathan's testimony about competitive products and RTC's contention regarding non-infringing alternatives to the accused products, topics for which he was designated, was not completely on par with what is expected from a corporate witness (*e.g.*, 11/26/19 Nathan Dep. at 28-46, 63-66).[5] On the other hand, FFR often beat a dead horse by repeatedly questioning Mr. Nathan about issues that he obviously did not know about, especially in connection with Topic 24. And given that FFR only addressed a handful of topics in the 2 hours and 40 minutes it questioned Mr. Nathan, it is unclear how, even if the deposition lasted late into the evening, FFR expected to address the remaining 60-plus topics in the three or so hours of remaining record time.

Ultimately, though, we need not describe all the ways that both sides could have better and more efficiently conducted the depositions. At the parties' meet and confer session, FFR mentioned a compromise that represents a fair and reasonable resolution of the parties' dispute: 3.5 additional hours of record time (doc. # 350-2: 12/20/19 Meet & Confer Tr. at 133-34). This allows FFR to exhaust the 3 hours and 11 minutes of record time it did not use, which we will not make FFR forfeit merely because it did not want to continue RTC's deposition past 6:00 p.m. on the Tuesday evening of Thanksgiving week. This amount of time also gives FFR 19 additional minutes to re-ask RTC's witness(es) about areas where it asserts Mr. Nathan's testimony was lacking. This is sufficient; FFR does not need two hours to do so.

---

[5] RTC defends Mr. Nathan's preparation in part by pointing to the number and breadth of topics FFR posed for RTC's Rule 30(b)(6) witnesses (*see, e.g.*, RTC Resp. # 2 at 1-4). FFR says that RTC has withdrawn any objections to the topics by agreeing to produce witnesses to testify about them (*see, e.g.*, FFR Ltr. # 2 at 1-3; 12/20/19 Meet & Confer Tr. at 124-26). We conclude that FFR misreads the point of RTC's comments about the scope of the topics. RTC has not refused to produce witnesses on certain topics or sought a protective order barring certain topics. Rather, RTC's point is that the scope of FFR's Rule 30(b)(6) topics made it difficult to know precisely which issues to prepare its witnesses to cover, which is what led to the need for frequent breaks so that the witnesses could obtain information sought in the questioning. RTC's explanation on this point has some merit, but does not completely explain, for instance, Mr. Nathan's lack of preparedness on even those items of prior art that the litigation has revealed to be of primary interest. That said, to avoid this issue in the continued deposition session, we will require FFR to provide information prior to that session as described below.

Therefore, we order RTC to make available a prepared and knowledgeable witness or witnesses to give 3.5 additional hours of Rule 30(b)(6) testimony. FFR may question RTC's witness(es) about any topic for which Mr. Nathan was designated, but it may not question the witness or witnesses about any of the topics for which Mr. Bloom was designated, as we find that Mr. Bloom's testimony adequately addressed those topics. To aid RTC in preparing a knowledgeable Rule 30(b)(6) witness or witnesses given the sheer number of topics still in play, FFR must inform RTC, seven days prior to the re-convened deposition, of any documents it may use to question RTC's witness(es). Also, to the extent FFR intends to question RTC's witness(es) about specific pieces of prior art, FFR must identify that prior art seven days prior to the deposition as well. Finally, RTC's re-convened Rule 30(b)(6) deposition must be completed within 21 days of this order. We expect that the parties will comply with these restrictions in good faith and in a manner that minimizes any additional disputes regarding RTC's Rule 30(b)(6) deposition.

### C.

FFR also seeks to recover reasonable attorneys' fees for the time its attorneys "wait[ed] in the Banner & Witcoff office" while RTC and its witnesses took deposition breaks to review or obtain additional information (FFR Mot. # 2 at 1; FFR Ltr. # 2 at 17). By FFR's calculation, this amounts to 3 hours and 20 minutes (FFR Mot. # 2 at 1). FFR does not specify for how many attorneys it is seeking fees, but as noted above, FFR had three attorneys on site for the beginning of Mr. Bloom's deposition.

As we explained above, each side bears responsibility for the lack of efficiency in the Rule 30(b)(6) deposition. Moreover, we note that over the past few months, both parties have generated volumes upon volumes of Rule 37.2 correspondence and meet and confer transcripts representing an untold number of attorney hours billed. Indeed, FFR's attorneys must have spent a substantial

number of hours compiling their 18-page, single-spaced, 30-exhibit Rule 37.2 letter about RTC's Rule 30(b)(6) witnesses. Yet now FFR makes an issue of, at most, ten hours of attorney time (three attorneys multiplied by 3 hours and 20 minutes). Given the amount of time and money we imagine both sides have already spent as part of their scorched-earth approach to discovery, FFR's request misses the forest for the trees. We deny FFR's request for attorneys' fees.

### III.

Lastly, FFR moves to compel RTC to produce all competitive merchandising display systems in its possession, accompanied by certain custodian information (FFR Mot. # 3 at 1). Alternatively, FFR seeks an order compelling RTC to make available for inspection the specific locations identified in FFR's First Set of Requests for Inspection to RTC (*Id.* at 1-2).

### A.

We begin with a discussion of the events giving rise to this motion. On October 30, 2019, FFR deposed Tony DiPaolo, who testified that RTC possessed samples of competitors' products (doc. # 355, at 2-14: FFR Ltr. # 3, at 1-2; FFR Ltr. # 3, Ex. 1 ("DiPaolo Dep.") at 275-78). Three business days later, on November 4, FFR served its First Set of Requests for Inspection on RTC (FFR Ltr. # 3 at 3; FFR Ltr. # 3, Ex. 2). These requests sought inspection of three locations at RTC that Mr. DiPaolo identified in his deposition, as well as "any other location(s) where RTC keeps samples of competitors' products" (FFR Ltr. # 3, Ex. 2). In the requests, FFR sought permission to inspect the identified locations three days later, on November 7 (*Id.* at 1). On November 6, RTC informed FFR that because RTC had 30 days under Federal Rule of Civil Procedure 34 to respond to FFR's requests for inspection, it would not be making the identified locations available for inspection the following day, November 7 (FFR Ltr. # 3, Ex. 4).

9

Meanwhile, FFR was trying to obtain discovery into RTC's possession of competitive products using another avenue: Document Request No. 81. This document request asked RTC to produce "[a]ll documents and communications referring or relating to any effort, activity, or other undertaking to acquire, duplicate, replicate, reverse engineer, study, test, evaluate, or analyze any third-party merchandising display system, including but not limited to FFR merchandising display systems, or any feature thereof" (doc. # 269: 10/28/19 Order at 1). Although the request does not expressly refer to "products" or "physical samples," FFR asserted that its definition of "documents" includes "any thing" which, in turn, encompasses such products or samples (DiPaolo Dep. at 321-22; FFR Ltr. # 3, Ex. 5, at 2-3).[6] RTC disagreed, but as a compromise, it collected third-party products from the locations identified in Mr. DiPaolo's deposition and made them, along with custodian information, available for inspection at its attorneys' offices (FFR Ltr. # 3, Exs. 7-12). The custodian information identified either a particular individual or, where RTC did not know the identity of the specific custodian, "RTC" (FFR Ltr. # 3, Exs. 8-12; doc. # 355-2: 12/20/19 Meet & Confer Tr. at 98). On November 12, an attorney from FFR inspected the products made available by RTC and documented the inspection (FFR Ltr. # 3 at 6-9; FFR Ltr. # 3, Exs. 8-13).

Fact discovery, except for issues raised by the Court's claim construction ruling and those concerning advice of counsel, closed on November 26 (doc. # 180 at 1). On December 4, RTC served its objections to FFR's First Set of Requests for Inspection, in which it continued to refuse to make the identified locations available for inspection (FFR Ltr. # 3, Ex. 14). RTC's refusal was

---

[6] The relevant set of document requests lists almost three pages of definitions that apply to the words and phrases used by the document requests, including Document Request No. 81, contained therein (doc. # 258 at 131-40). The definition of "document" and "documents" itself covers about half of a page (*Id.* at 132).

based, in part, on its contention that FFR's requests for inspection were untimely because they did not allow RTC 30 days to respond before discovery closed (*Id.*).

**B.**

FFR primarily contends that the relief it seeks is justified by its November 4 Requests for Inspection. Under the Northern District of Illinois's standing order establishing pretrial procedure, however, parties must *complete* discovery by a discovery deadline. *Finwall v. City of Chicago*, 239 F.R.D. 494, 498 (N.D. Ill. 2006); N.D. Ill. L.R. 16.1(4). That means "[d]iscovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with" the Local Rules. N.D. Ill. L.R. 16.1(4). A party has 30 days to respond to a request for inspection, Fed. R. Civ. P. 34(b)(2)(A), so to comply with Local Rule 16.1(4), FFR had to serve its requests for inspection by October 27, *i.e.*, 30 days before the November 26 discovery cut-off. FFR did not do so; it served its requests a week later, on November 4. As FFR's requests for inspection were untimely, RTC did not have to comply with them. *See Dinkins v. Bunge Mill., Inc.*, 313 F. App'x 882, 884 (7th Cir. 2009) (a party need not respond to untimely discovery requests).

FFR contends that its requests for inspection were timely because they were served three business days after Mr. DiPaolo's deposition, when FFR first learned that RTC kept competitive products in a couple of different areas at RTC (FFR Ltr. # 3 at 10-11). We disagree. That RTC might possess samples of its competitors' products was not something that only came to light as a result of Mr. DiPaolo's deposition. Indeed, as early as September 20—more than a month before Mr. DiPaolo's deposition—FFR asserted that any acquisition by RTC of a merchandise display system is relevant to this litigation (doc. # 258 at 5-6). Nothing prevented FFR from propounding

a generalized request to inspect all locations where RTC keeps samples of competitors' merchandise display systems at this time, or even earlier in the litigation.

C.

FFR's Rule 37.2 letter also discusses Document Request No. 81, which seeks certain documents and communications relating to third-party merchandising display systems (FFR Ltr. # 3 at 5-6). It is unclear to what extent FFR contends that its requested relief is supported by this document request. Notably, FFR's Rule 37.2 letter was directed to "RTC's deficient response to FFR's requests for *inspection*" and not, in contrast, to RTC's purportedly deficient response to Document Request No. 81 (*Id.* at 1) (emphasis added). Nonetheless, we address this discovery request in the interest of completeness.

As already noted, FFR argues that because the word "documents" in Document Request No. 81 is defined to include "any thing," it requests the production of any actual third-party merchandising display product possessed by RTC. It appears, however, that the first time FFR informed RTC that it expected the production of such products in response to Document Request No. 81 was at the end of Mr. DiPaolo's October 30 deposition (DiPaolo Dep. at 321-22). This was roughly two-and-a-half months after FFR served Document Request No. 81 (*see* doc. # 258 at 139). It was also after FFR, in its September 20 Rule 37.2 letter, raised issues with RTC's production of documents and communications in response to Document Request No. 81 without ever bringing up the issue of producing actual products (*see id.* at 5-6). This scenario suggests that FFR did not intend for Document Request No. 81—which, on its face, does not refer to physical samples or products—to require the production of product samples until Mr. DiPaolo specifically testified about the existence of such samples. Then, FFR needed to see if an existing discovery request could be read to encompass those samples, and it settled on Document Request No. 81.

This does not justify the broad request for discovery FFR seeks, especially after the close of discovery.

We also reject FFR's suggestion that we found, in our October 28, 2019 Order, that third-party physical products are addressed by Document Request No. 81 (FFR Ltr. # 3 at 5-6 n. 1 (asserting that the Court's October 28 Order addressed whether third-party physical products are responsive to Document Request No. 81)). In that Order, we merely ordered RTC to search for and produce *documents* responsive to that request for a certain time period (10/28/19 Order at 1-2). As neither party presented the third-party physical product issue now before us, we did not make any finding one way or the other about it (*Id.*).

If FFR wanted to obtain or inspect any actual products in RTC's possession, it could have requested as much in August (when FFR propounded Document Request No. 81) by serving a discovery request specifically seeking access to the physical samples and products of any third-party systems in RTC's possession. For whatever reason, FFR did not do so. It is not fair to allow FFR to rely upon a two-word snippet from a one-half page long definition of "documents" as an after-the-fact excuse for its oversight.

### D.

The foregoing bases support denying FFR's motion to compel inspection in its entirety. Even so, we note that during the parties' meet and confer, RTC offered to (1) provide any additional custodian information it has about the third-party products it made available for inspection on November 12; and (2) investigate whether RTC possesses the third-party product identified by Stephen Hardy during his deposition and, if so, provide that product for inspection with accompanying custodian information (12/20/19 Meet & Confer Tr. at 105, 108-09, 112). Although FFR certainly is not *entitled* to the benefit of this compromise after rejecting it, we find

13

that in these circumstances, the better course is to have RTC follow through with its offered compromise.

Thus, we order RTC to (1) provide any additional custodian information it has about the third-party products it made available for inspection on November 12; and (2) investigate whether RTC possesses the third-party product identified by Stephen Hardy during his deposition and, if so, provide that product for inspection with accompanying custodian information. RTC shall do so within 21 days of this order.

## CONCLUSION

For the foregoing reasons, we grant in part FFR's motions to compel (docs. ## 345, 349, and 354).

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: January 14, 2020**