# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RTC INDUSTRIES, INC., | ) | |
| | ) | **Case No. 17 C 3595** |
| **Plaintiff,** | ) | |
| | ) | **District Judge Pacold** |
| | ) | |
| **v.** | ) | **Magistrate Judge Schenkier** |
| | ) | |
| FASTENERS FOR RETAIL, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Fasteners for Retail, Inc. ("FFR") has moved to compel plaintiff RTC Industries, Inc. ("RTC") to (1) produce unredacted copies documents that RTC has withheld or redacted on the basis of attorney-client privilege or, alternatively, (2) provide these copies to the Court for our *in camera* review (doc. # 322: FFR's Mot. to Compel). Pursuant to a protocol established by the Court, the parties exchanged Rule 37.2 letters and conducted a court-reported meet and confer session (*see* doc. # 323, at 2-17: FFR's Rule 37.2 Ltr.; doc. # 323-1, at 2-6: RTC's Rule 37.2 Resp.; doc. # 323-2: 11/26/19 Meet and Confer Tr.).[1] To aid us in resolving FFR's motion, we ordered RTC to provide a subset of the disputed documents for our *in camera* review (doc. # 325).

---

[1] FFR filed all the exhibits under seal (*see* doc. # 323). As we have done with prior orders and opinions issued in this case, if we must refer to a sealed document, we attempt to do so without revealing any information that could be reasonably deemed confidential. To the extent we discuss confidential information, however, we have done so because it is necessary to explain the path of our reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

We have reviewed the parties' Rule 37.2 correspondence, the relevant attachments, the transcript of the meet and confer session, and the withheld and redacted documents provided for our *in camera* review. Our rulings on FFR's motion are set forth below.[2]

## I.

In patent cases, Federal Circuit law governs privilege disputes that relate to an issue of substantive patent law; otherwise, Seventh Circuit law applies. *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1363 n.6 (Fed. Cir. 2017); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803-04 (Fed. Cir. 2000). The disputes here do not appear to implicate substantive patent law, and neither party cites to or relies upon Federal Circuit law. Thus, we apply Seventh Circuit law to the privilege issues raised in FFR's motion.

The attorney-client privilege protects from disclosure "[c]onfidential communications between a client and her lawyer for the purpose of receiving legal advice." *United States v. Bey*, 772 F.3d 1099, 1101 (7th Cir. 2014); *see also United States v. Leonard-Allen*, 739 F.3d 948, 953 (7th Cir. 2013) (stating that the attorney-client privilege "covers only those communications which reflect the lawyer's thinking or are made for the purpose of eliciting the lawyer's professional advice or other legal assistance") (internal alteration and quotations omitted). The attorney-client privilege, however, "is in derogation of the search for the truth," so "it is construed narrowly." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

---

[2] On January 16, 2020, we held a telephonic status conference regarding settlement, and we scheduled a settlement conference for March 11, 2020 (doc. # 386). We also asked the parties whether they wished to postpone further discovery proceedings and deadlines pending the settlement conference (*Id.*). The parties requested that we postpone resolving the current motion (and other pending discovery motions) until after the March 11 settlement conference, which we did (docs. ## 393, 396). On February 18, after reviewing the parties' settlement submissions and discussing the issues with counsel for the parties, we struck the March 11 settlement conference and sought the parties' views on whether we "should continue to hold in abeyance ruling on pending discovery motions" (doc. # 408). The parties advised us that the stay should be lifted, and we lifted the stay on February 21 (doc. # 409).

When a party withholds an otherwise discoverable document based on the attorney-client privilege, it must expressly claim that privilege, and it generally does so by identifying that document on a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013). The proponent of the privilege bears the burden of showing that the attorney-client privilege is applicable to each of the documents identified on the log. *See United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) ("The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements"); *Evans v. City of Chicago*, 231 F.R.D. 302, 311 (N.D. Ill. 2005) ("The party asserting the attorney-client privilege has the burden of establishing each of [the privilege's] elements on a document-by-document basis").

On January 18, 2019, RTC served its initial privilege log, which included 15,978 log entries (doc. # 323, at 1839-3047: RTC's Original Priv. Log). On August 2, 2019, RTC served a second supplemental privilege log, which added log entries 15,986-16,267 (doc. # 323, at 3049-83: RTC's 2d Suppl. Priv. Log).[3] A week later, RTC served an "amended" privilege log, which removed certain log entries but still encompassed log entries 1 through 16,267 (doc. # 323-1, at 1553-2540: RTC's 8/9/19 Am. Priv. Log). FFR also served privilege logs, but they are not at issue here. Each party then filed a motion to compel that challenged certain of the other side's assertions of attorney-client privilege as a basis to withhold documents or information from production (docs. ## 226, 232).

On October 8, 2019, we issued a detailed Memorandum Opinion and Order resolving the parties' motions to compel (doc. # 254: 10/8/19 Op.). In that opinion, we ordered the parties "to

---

[3] Although it is not in the record in connection with this motion, we assume that RTC served a first supplemental privilege log that included log entries 15,979-15,985 sometime between January 18 and August 2, 2019.

meet and confer regarding the level of detail that *both* parties believe should be included in their privilege log entries so their privilege claims can be adequately assessed" (*Id.* at 7) (emphasis in original). The parties agreed on the level of detail necessary for some privilege log entries ("sales issues," "business transactions," "product samples," and "intellectual property" entries) but not for others ("patent prosecution" and "contracts/contract issues" entries) (doc. # 260: Parties' 10/18/19 Joint Submission, at 2-3, 9-15). On October 22, we issued another order, in which we adopted the level of detail the parties agreed upon and set forth the description requirements for the disputed "patent prosecution" and "contracts/contract issues" entries (doc. # 261: 10/22/19 Order). We also set November 1, 2019 as the deadline for the parties to update their privilege logs to comply with our rulings (*Id.*).

On November 1, RTC served a fifth supplemental privilege log (doc. # 323, at 19-1837: RTC's 5th Suppl. Priv. Log). FFR contended that this supplement did not comply with our October rulings in several ways (FFR's Rule 37.2 Ltr. at 1-2). FFR grouped the purportedly offending log entries into five categories, represented by five tables (*Id.* at 4-14; doc. # 323, at 3084-93: FFR's Rule 37.2 Ltr. Ex. 4). In response, RTC served a seventh supplemental privilege log dated November 18, 2019 (RTC's Rule 37.2 Resp. at 3; doc. # 323-1, at 8-1550: RTC's 7th Suppl. Priv. Log).[4] Based on the changes RTC made in this supplement, FFR challenges only the entries it identified in Tables 1-4 of its Rule 37.2 letter (except for log entry 3007)—which still amount to more than 900 privilege log entries (FFR's Mot. at 2; FFR's Rule 37.2 Ltr. Ex. 4). We address each category of log entries in turn.

---

[4] As shown in later filings, RTC served a sixth supplemental privilege log on November 11, 2019 (doc. # 342 at 21-24) and an eighth supplemental privilege log on December 13, 2019 (doc. # 413 at 352-56). In this opinion, we only address RTC's seventh supplemental privilege log.

## II.

In Table 1, FFR identified nearly 700 log entries that it says fail to identify the legal issue that is the subject of the document or the communication (FFR's Rule 37.2 Ltr. at 4-6; *id.*, Ex. 4, Table 1). After addressing RTC's argument that its current log entry descriptions provide this information, we address RTC's assertion of attorney-client privilege over each of the 40 documents submitted by the parties for our *in camera* review.

### A.

RTC was required to identify "the legal issue that is the subject of the" document or communication for all privilege log entries relating to "sales issues," "business transactions," "product samples," "intellectual property," and "patent prosecution" (Parties' 10/18/19 Joint Submission at 2-3; 10/22/19 Order). The parties' dispute, however, focuses on RTC's "patent prosecution" log entries. Indeed, 39 out of the 40 documents selected by the parties for our *in camera* review are represented by "patent prosecution" entries.

A representative patent prosecution entry (log entry 4) reads as follows:

> Profit Pusher 3 is at issue in the email; Banner & Witcoff, Ltd. is the lawyer or law firm whose advice is provided, sought or reflected in the email; there is no patent number or patent application number referenced in the email; and the legal issue that is the subject of the email is patent prosecution.

(RTC's 7th Suppl. Priv. Log. at 1). Using this description as an example, RTC explained that "patent prosecution" is the legal issue that is the subject of the document (RTC's Rule 37.2 Resp. at 2). According to RTC, "[p]roviding additional detail beyond the existing descriptions RTC has provided would risk RTC divulging privileged information, and is wholly unwarranted" (*Id.*).

RTC has already once argued that "patent prosecution *is* the legal issue that is the subject of the communication" (Parties' 10/18/19 Joint Submission at 11) (emphasis in original). But we

rejected that argument when we required the parties to separately identify the legal issue that was the subject of a withheld or redacted "patent prosecution" document (10/22/19 Order). We would not have done so had we agreed with RTC's proposed level of detail, which did not require the separate identification of the legal issue (Parties' 10/18/19 Joint Submission at 9). RTC has offered no good reason why it should be permitted to rely here on an argument that we unequivocally rejected in making our October 22 ruling to contend that it has complied with that very ruling.

Moreover, RTC's purported fear of disclosing privileged information with more detailed privilege log descriptions is unfounded. As FFR pointed out during the parties' meet and confer, if a patent prosecution document has to do with determining the right inventor, the document's legal issue could be identified as "naming inventors" or, even more simply, inventorship (11/26/19 Meet and Confer Tr. at 13:18-23). Or, as another example, if a communication is seeking or providing advice in connection with the drafting of a patent application, the log entry could say as much without disclosing attorney-client privileged information. Indeed, RTC could have separately identified the legal issues discussed in the 40 documents we reviewed *in camera* without divulging the contents of any legal advice sought or received. We have no reason to believe that RTC could not have done the same with the other documents for which RTC contends "patent prosecution" *is* the legal issue.

Simply asserting that patent prosecution (or intellectual property, sales issues, *etc.*) is the legal issue addressed by a withheld or redacted document does not comply with our October 22 ruling. We order RTC to supplement its privilege log to separately identify the legal issue that is the subject of the document for all privilege log entries relating to "sales issues," "business transactions," "product samples," "intellectual property," and "patent prosecution."

**B.**

With respect to Table 1, the parties selected 40 documents withheld or redacted by RTC for our *in camera* review. We first address the documents selected by RTC, then the documents selected by FFR.

**1.**

**Log entry 451 (redaction to RTC0169805-08):** This entry corresponds to a redacted portion of an email sent by Gideon Schlessinger, RTC's vice president of product development, to Richard Nathan, RTC's CEO. Neither Mr. Schlessinger nor Mr. Nathan is an attorney.[5] Even so, the redacted information is protected by the attorney-client privilege, as it reflects what Mr. Schlessinger intends to discuss with an RTC attorney about obtaining intellectual property protection. RTC may retain this redaction.

**Log entry 499 (redactions to RTC0170080-84):** This log entry represents three redacted sentences from an email sent by Mr. Schlessinger to Mr. Nathan. The third sentence reflects the advice of attorneys and is thus privileged. The first two sentences, if unredacted, would reveal information that might allow a reader to determine aspects of the privileged information disclosed in the third sentence, so we find that these sentences are properly redacted as well.

**Log entry 655 (redaction to RTC0171640-42):** This log entry corresponds to a redacted portion of an email from Mr. Nathan to Mr. Schlessinger. The redacted portion recounts a request

---

[5] Unless we note otherwise, any RTC employee or officer we discuss in the remainder of this opinion has not been identified as an attorney. In addition, all titles and job descriptions are taken from the chart of names and roles provided by RTC with its seventh supplemental privilege log (*see* doc. # 323-1, at 1547-50).

for advice from counsel regarding intellectual property protection, and we find that it is properly redacted as privileged.

**Log entry 1746:** This log entry represents an email sent by John Swafford, RTC's vice president of technology products, to Mr. Nathan. The email relates and refers to an invention disclosure and other documentation that appear to be intended to be relayed to RTC's attorneys, and that also reflects the advice of counsel. We find this email protected by the attorney-client privilege.

**Log entry 3095:** This log entry represents an email chain between RTC employees and Banner Witcoff attorneys regarding legal advice regarding potential intellectual property protection and strategy. RTC's withholding of these emails on the basis of attorney-client privilege is proper.

**Log entry 4195:** This log entry relates to a chain of five emails involving, among others, Stephen Hardy, director of new product design at RTC, and John Ward, RTC's vice president of product management. RTC need not produce the portion of the email chain that begins with the December 22, 2015 email from Bradley Van Pelt, RTC's attorney, to Mr. Hardy and other attorneys for RTC, and ends with the December 30, 2015 email from Mr. Hardy to Mr. Van Pelt, as all these emails reflect legal advice or information for the provision of legal advice regarding the drafting of a patent application. The March 4, 2016 email from Mr. Hardy to Mr. Ward, however, is not privileged. Although Mr. Hardy forwards one or more of the aforementioned emails, he does not say anything that reveals any of the legal advice or client confidences contained therein. RTC must produce Mr. Hardy's March 4 email but it may redact the earlier dated emails on the chain.

**Log entry 4828:** This log entry represents an email from Mr. Ward to Mr. Hardy in which Mr. Ward forwards an email sent by RTC's attorney, Joseph Berghammer, to Messrs. Ward and Swafford. Mr. Berghammer's email requests information to aid in the provision of legal advice relating to the drafting of a patent application, so it is privileged. Mr. Ward's forwarding email discusses the substance of Mr. Berghammer's email, and we find that it is privileged as well. Thus, RTC's assertion of attorney-client privilege for this log entry is appropriate.

**Log entry 5085:** This log entry refers to an email sent by Mr. Swafford to Mr. Ward on June 8, 2007, in which Mr. Swafford forwards an email (with attachments) that was sent to Mr. Ward by one of RTC's attorneys, Scott Burow, on June 7, 2007. Mr. Burow's June 7 email and the emails preceding it are properly withheld because they reflect attorney-client privileged discussions about the drafting of a patent application. The body of Mr. Swafford's forwarding email, however, does not disclose anything about the substance of the legal advice or client confidences discussed in those prior emails. Nor do the subject line and attachment titles disclose such information. Although the forwarded emails contain privileged material, the forwarding email does not. Thus, RTC must produce the June 8 email, but may redact from that production the earlier dated emails and attachments.

**Log entry 12788:** This log entry relates to an email chain. RTC need not produce the portion of the email chain that begins with the January 30, 2007 email from Mr. Ward to RTC's attorney, Mr. Berghammer, and ends with the March 21, 2007 email from Mr. Burow, another attorney representing RTC, to Mr. Swafford, as all these emails reflect legal advice or information given for the provision of legal advice regarding the drafting of a patent application. But the March 21, 2007 email from Mr. Swafford to Mr. Ward, which forwards one or more of the aforementioned privileged emails, is not itself privileged because Mr. Swafford does not say anything that reveals

9

legal advice, a request for legal advice, or client confidences. RTC must produce this email from Mr. Swafford to Mr. Ward, but not the other emails covered by the log entry.

**Log entry 12805 (redaction to RTC0186851-56):** The document provided for our *in camera* review with respect to this log entry has one three-sentence redaction on the first page. We addressed this redaction in our February 26, 2020 Order resolving FFR's motion to compel the production of documents RTC "clawed back" on October 28, 2019 (doc. # 423: 2/26/20 Order).[6] As we explained, the redaction is proper because the first two redacted sentences "reflect legal advice from RTC's attorney about patent marking" and the last sentence appears "to pertain to attorney approval for certain actions" (*Id.* at 5).

**Log entry 13409:** This log entry represents a chain of three emails. The first email, sent by Mr. Ward to Mr. Schlessinger on January 31, 2014, relays legal analysis from Mr. Berghammer regarding the scope of RTC's intellectual property protection and other intellectual property. This email is protected by the attorney-client privilege. In the second email, sent on February 2, Mr. Schlessinger forwards Mr. Ward's January 31 email to Mr. Nathan. In doing so, Mr. Schlessinger does not disclose any aspect of Mr. Berghammer's analysis or any other confidential or privileged information. This email is not protected by the attorney-client privilege. The last email in the chain is a February 2 email sent by Mr. Nathan to Mr. Ward about his January 31 email. This email seeks information about Mr. Berghammer's legal advice, so it is protected by the attorney-client privilege. In short, RTC may withhold the first and third emails of this email chain, but it must produce the second email.

---

[6] We note, however, that the document provided to us in connection with FFR's current motion does not have the "Gen 2" redaction found on the document provided to us in connection with FFR's clawback motion (*see* 2/26/20 Order at 5).

10

**Log entry 13545 (redactions to RTC0187505-06):** This log entry corresponds to two portions of an email sent by Mr. Ward to Mr. Nathan that have been redacted. Both redacted portions discuss product information provided to RTC's attorney to obtain legal advice about coverage by existing intellectual property, as well as the attorney's advice in response. RTC properly redacted these portions on the basis of attorney-client privilege.

**Log entry 14828:** This log entry relates to an email chain. RTC need not produce the portion of the email chain that begins with the January 16, 2014 email from Joel Barenbrugge, an RTC design engineer, to Mr. Van Pelt, an attorney, and ends with Mr. Barenbrugge's January 21, 2014 email to Mr. Van Pelt, Mr. Berghammer, and Mr. Ward, as all these emails reflect legal advice, requests for information to aid in giving legal advice, and the provision of such information relating to the drafting of a patent application. But the January 30, 2014 email from Mr. Barenbrugge to Mr. Ward, which forwards one or more of the aforementioned privileged emails, is not itself privileged because Mr. Barenbrugge does not say anything that reveals legal advice or client confidences. RTC must produce this January 30, 2014 email.

**Log entry 15407 (redaction to RTC0187889-92):** This log entry corresponds to a redaction to an email from Mr. Ward to other RTC employees. In the redacted portion, Mr. Ward recounts work being done by RTC's attorney with respect to virtual patent marking, as well as related information and analysis about patent marking. The context of the email suggests that this information and analysis was provided by the attorney, so we find this email's redaction proper.

**Log entry 15462 (redaction to RTC0187968-69):** This log entry represents a redaction to an email sent by Mr. Swafford to other RTC employees. The redacted portion discusses information that was provided to RTC's attorney for the drafting of a patent application. RTC's assertion of attorney-client privilege is proper.

**Log entry 15470 (redaction to RTC0187981-82):** For this log entry, RTC redacted a sentence from an email sent by Mr. Ward to other RTC employees, in which Mr. Ward relays advice from attorneys pertaining to the marking of products with respect to intellectual property. We find this aspect of the email privileged and RTC's redaction proper.

**Log entry 15576 (redaction to RTC0188289-90):** This log entry corresponds to a redacted sentence from an email sent by Todd Grelyak, an RTC product manager, to Mr. Ward. Although the sentence says that Mr. Nathan is reviewing a particular product with patent attorneys, it does not disclose the reason for the review or the substance of the review. Similarly, the redacted portion does not disclose any legal advice or analysis provided as a result of the review. This sentence is not privileged, and RTC must produce RTC0188289-90 without redaction.

**Log entry 15729:** This log entry corresponds to an email chain that RTC produced to FFR as Bates number RTC0249076. RTC voluntarily and intentionally produced this document without redaction on December 30, 2019. Given this production, we need not address whether RTC's initial withholding of the document based on attorney-client privilege was proper.

**Log entry 16253 (redaction to RTC0200351-56):** This log entry corresponds to a redaction to an email sent by Mr. Schlessinger to Mr. Nathan, with Mr. Nathan's response and Mr. Schlessinger's response to that response, contained in the body of the original email. The first two sentences of the redacted portion do not disclose privileged information, so RTC must remove that portion of the redaction. But RTC may retain the redaction for the sentences that follow, as this portion discusses requests for legal advice to Banner Witcoff regarding a product.

**Log entry 16254 (redaction to RTC0200364-65):** This log entry represents a redacted sentence from an email sent by Mr. Swafford to Mr. Schlessinger. The redaction is improper. The first half of the sentence has nothing to do with legal advice and analysis, and although the second

half of the sentence refers to the subject matter of a meeting with Banner Witcoff, the reference is at a level of detail that one would disclose in a privilege log. Indeed, this half of the sentence reveals nothing more than would a log entry disclosing that a communication was about the filing of a patent application. RTC must produce RTC0200364-65 without redaction.

**2.**

**Log entry 4:** This log entry corresponds to an email between Andy Cremer, RTC's vice president of marketing and product management, and Mr. Nathan. It does not disclose legal analysis or advice from an attorney; nor does it disclose confidential information that is intended to be disclosed to an attorney to seek such legal analysis or advice. This email is not privileged, and RTC must produce it.

**Log entry 17:** This log entry represents an email sent by Mr. Hardy to Mr. Nathan. Mr. Hardy's email forwards an email he previously sent to attorneys at Banner Witcoff about potential intellectual property protection and adds some comments about the forwarded email. The comments reveal enough about the subject matter of the forwarded email, which appears to be itself privileged, that RTC's assertion of attorney-client privilege over Mr. Hardy's email to Mr. Nathan is proper.

**Log entry 1873:** This log entry corresponds to an email chain that RTC produced to FFR as Bates number RTC0249043. RTC voluntarily and intentionally produced this document without redaction on December 30, 2019. Given this production, we need not address whether RTC's initial withholding of this document based on attorney-client privilege was proper.

**Log entry 2022:** This log entry represents email exchanges between Mr. Ward and Mr. Nathan. The first email in the chain, sent by Mr. Ward on September 20, 2016 at 5:17 a.m., largely contains information that is not legal advice or analysis from an attorney and should be produced,

except that RTC can redact as privileged (1) the last sentence of the first paragraph; ; and (2) the third and fourth sentences of the third paragraph. These sentences disclose legal advice provided by attorneys about the filing of foreign patent applications. The remaining two emails in the chain—a September 19, 2016 6:03 p.m. email from Mr. Nathan[7] and a September 20, 2016 8:36 a.m. email from Mr. Ward—do not disclose any legal advice or analysis; they merely request, and provide, a publicly-filed patent document. RTC must produce these emails.

**Log entry 3094:** This log entry corresponds to an email chain consisting of three emails. The initial email, sent by Mr. Hardy, shares his thoughts about certain intellectual property. Although Mr. Hardy suggests that RTC's attorney, Mr. Berghammer, might want to consider these thoughts, there is no indication that they were, in fact, communicated to Mr. Berghammer to obtain his legal advice or analysis. Indeed, the final email of the chain (from Mr. Nathan) indicates that RTC's attorneys were not consulted on the issues raised by Mr. Hardy at that time. Neither Mr. Hardy's email nor Mr. Nathan's email is privileged, and they must be produced. However, RTC may redact the first, second, and fourth sentences from the second email (sent from Mr. Ward to Mr. Nathan) as privileged: "Would you like . . . around forever" and "It also might . . . the moment." These portions recount Mr. Berghammer's advice about the state of the art and potential questions to ask Mr. Berghammer related to that advice.

**Log entry 3152 (redaction to RTC0139881):** This log entry corresponds to three redacted sentences from an email sent by Mr. Ward to Gary Cohen, RTC's senior vice president of customer business development. The redacted information discusses working with Banner Witcoff and, in

---

[7] Despite the earlier September 19 date, Mr. Nathan's email appears to be in response to Mr. Ward's September 20 5:17 a.m. email. We assume the discrepancy is related to document processing, email settings, or something of that sort.

context, appears to relay legal understandings provided or discussed with Banner Witcoff regarding patent marking. For that reason, we find the redactions proper.

**Log entry 3163 (redaction to RTC0140945-47):** The redaction at issue withholds from production most of an email sent by Mr. Cohen to Mr. Nathan, covering aspects of the original email as well as subsequent comments from both Mr. Cohen and Mr. Nathan. The email and comments address a policy implemented with respect to Walmart, and it appears that the email, when in final form, was to be sent to other RTC employees. None of the redacted information reveals legal analysis or advice. At most, the email indicates that certain language was reviewed with RTC's attorneys, but this does not amount to the conveyance of legal analysis or advice. The redacted portion is not privileged, and RTC must produce that document without redaction.

**Log entry 3230:** This log entry represents an email sent by Mr. Ward to several RTC employees. In his email, Mr. Ward discusses actions taken by RTC's IT group and Banner Witcoff in connection with patent marking. RTC may redact the second sentence of the email, which reveals Banner Witcoff's legal work with respect to patent marking. We do not see anything else in the email, however, that reveals legal analysis or advice or, alternatively, confidential information provided for the purposes of obtaining such analysis or advice. RTC must produce this email with the appropriate redaction.

**Log entry 3297:** This log entry corresponds to an email sent by Mr. Ward in response to an email sent by Stuart Parsons, RTC's head of Ready Team. Mr. Parsons's initial email reveals no legal advice or confidential information meant to obtain legal advice, so it is not privileged and must be produced. Mr. Ward's response, however, recounts legal advice and analysis provided by an attorney relating to product design and the scope of intellectual property protection. This email is privileged and may be redacted from the production.

15

**Log entries 3385 and 3465:** These log entries represent two similar email chains. In each email chain, an RTC employee (1) sends information to Mr. Ward on July 26, 2013, who in turn (2) forwards the information to Mr. Berghammer, RTC's attorney, on the same day. Mr. Berghammer (3) sends a response email to Mr. Ward and Mr. Hardy on July 29. Mr. Hardy then (4) responds to Mr. Berghammer on July 30, copying Mr. Ward and another Banner Witcoff attorney. In the email chain corresponding to log entry 3385, Mr. Ward forwards Mr. Hardy's July 30 email to Mr. Schlessinger; in the email chain corresponding to log entry 3465, Mr. Ward forwards Mr. Hardy's July 30 email to Mr. Barenbrugge.

The first four emails of this chain (ending with Mr. Hardy's July 30 email) contain information sent to and requested by attorneys for the provision of legal advice regarding the filing of a patent application. They are thereby protected by the attorney-client privilege and properly withheld. The last email in both log entry 3385 and log entry 3465, however, must be produced because they do not independently contain any privileged information. We have also considered whether the subject line and titles of the documents attached to Mr. Ward's forwarding emails suggest or disclose privileged information, and we find they do not. Thus, RTC must produce the final email of the email chains at issue—Mr. Ward's forwarding email to Mr. Schlessinger for log entry 3385 and Mr. Ward's forwarding email to Mr. Barenbrugge for log entry 3465.

**Log entry 3560:** This log entry corresponds to Mr. Ward's forwarding of an email to himself, without comment, in October 2012. The underlying forwarded email was sent by Mr. Ward to Scott Coffman, RTC's former IT director, in May 2012. Mr. Ward's October 2012 forwarding email does not reveal attorney advice or client confidences, as it contains nothing of substance. So it must be produced. The initial email from Mr. Ward to Mr. Coffman discusses a legal issue (patent marking), but our read is that Mr. Ward is conveying his own understanding of

the issue and not advice or analysis about this issue obtained from an attorney. There is one exception: sentences three, four and five disclose information that RTC's attorneys were expected to provide in connection with the marking issue. We find that RTC may properly redact this sentence on attorney-client privilege grounds. The remainder of the email, however, must be produced.

**Log entry 3765:** This log entry represents a response by Tony DiPaolo, a senior product development manager at RTC, to an email from Mr. Ward. Mr. Ward's email recounts discussions with an attorney about patent marking that are protected by the attorney-client privilege, and that email is properly withheld. Mr. DiPaolo's email in response, however, neither discloses legal advice nor confidential information of the type protected by the attorney-client privilege. RTC must produce Mr. DiPaolo's email, but may redact from the production the email from Mr. Ward to Mr. DiPaolo.

**Log entry 3905:** This log entry corresponds to an email sent by Mr. Swafford to Mr. Ward and several other RTC employees. Mr. Swafford's email responds to an email sent by Mr. Ward, which, in turn, responds to an email sent by Joel Finfer, RTC's account director. Mr. Finfer's email does not contain legal advice or information provided to obtain legal advice, so it is not privileged. Mr. Ward's email discusses placing part numbers and other information on products, as does Mr. Swafford's email. Only one portion of Mr. Ward's email discloses privileged information: the portion in the second paragraph that begins "Third" and ends with "also?" The first sentence from Mr. Swafford's email also reflects privileged information. Because these passages read together disclose a request for, and provision of, patent information communicated by RTC's attorney, RTC may redact these passages. Otherwise, RTC must produce the remainder of the emails.

**Log entry 4118:** This log entry relates to an email chain involving David Breslow, RTC's former director of lighting products, Mr. Cremer, and Mr. Ward. We find that all the emails are properly withheld on the basis of attorney-client privilege, as they discuss information to provide to RTC's attorneys in connection with the development of intellectual property.

**Log entry 4301:** This log entry represents an email chain consisting of four emails sent among RTC employees: (1) an email sent by Mr. Parsons to Mr. Hardy, Mr. Ward, and other RTC employees; (2) Mr. Hardy's email in response; (3) an email then sent by Mr. Ward to Messrs. Hardy and Parsons; and (4) an email from Mr. Parsons to Messrs. Ward and Hardy. None of these emails should be withheld in their entirety, but the following portions of the emails may be redacted on attorney-client privilege grounds: (1) the second paragraph of Mr. Parsons's initial email starting with "I wanted" and the second sentence of the third paragraph of that email starting with "i just wanted"; (2) the second paragraph of Mr. Hardy's email in response. starting with "Relative to . . ." up to the comma; and (3) the first sentence of Mr. Ward's email to Messrs. Hardy and Parsons starting with "Can you." We do not see anything in the final email (from Mr. Parsons to Messrs. Ward and Hardy) disclosing legal analysis or advice or anything else that could be deemed to be privileged. RTC must produce this email in its entirety.

**Log entry 4725 (redaction to RTC0147655):** This log entry corresponds to a redaction applied to an email sent by Mr. Cremer to Mr. Cohen. The redacted information merely indicates that intellectual property protection for a particular product is a consideration and that there were conversations with one of RTC's attorneys at one time about it. The redacted information does not disclose the substance of those conversations or of any legal advice or analysis provided by the attorney. In short, the disclosure at issue is so high-level that there is no risk of invading the attorney-client privilege. RTC must produce the document without redaction.

**Log entry 10905:** This log entry corresponds to an email chain. The first two emails are (1) an email from Mr. Schlessinger to a third party, Computer Packages, Inc., about opening an account for monitoring and paying RTC's patent renewal fees; and (2) Computer Packages' email in response. Neither email discloses legal advice from RTC's attorneys; in any event, any privilege over the contents of Mr. Schlessinger's email was waived when he sent it to a third party outside the scope of the attorney-client privilege (*see* 10/8/19 Op. at 8-9). In the third email, Mr. Schlessinger merely forwards Computer Packages' response to Mr. Ward with a message that is in no way privileged. Because none of the emails in the logged chain disclose attorney-client privileged information, RTC must produce all of them.

**Log entry 12883:** This log entry corresponds to an email chain. The first eight emails of the chain (ending with Mr. Van Pelt's January 2, 2013 email to Messrs. Ward, DiPaolo, and Schlessinger) are exchanges between RTC and RTC's attorneys about the drafting of a patent application and inventorship for the application. We find these emails to be protected by the attorney-client privilege. The ninth (and final) email in the chain is an email from Mr. Schlessinger forwarding the previous email(s) to other RTC employees. The titles of the attachments to Mr. Schlessinger's email and the third sentence of his email beginning with "Can you" discloses aspects of the forwarded emails that we find to be privileged. RTC may redact these portions of the last email but it must produce the remainder of the January 2 email.

**Log entry 13122:** This log entry corresponds to a lengthy email chain. The first nine emails of the chain reflect exchanges of legal advice and information to obtain legal advice between and among RTC and its attorneys regarding the drafting and filing of a patent application, as well as inventorship. We find these emails (ending with Mr. Van Pelt's February 11, 2013 email to Messrs. Ward, DiPaolo, and Schlessinger) to be protected by the attorney-client privilege.

The final three emails in the chain are email exchanges between RTC employees about information requested by RTC's attorneys. The tenth email, sent by Mr. DiPaolo on February 11, 2013 to Mr. Parsons and Barry Hearn, an RTC account director, reveals the substance of the information sought by RTC's attorneys in the prior email exchanges, so we find that it is privileged. The eleventh email, sent by Mr. Hearn to Mr. DiPaolo on February 12, does not disclose or suggest the substance of the privileged matter set forth in the prior emails. This email must be produced in its entirety. The twelfth (and last) email, sent by Mr. DiPaolo to Messrs. Hearn and Parsons on February 13, is also, for the most part, not privileged. However, RTC may redact the titles of the first two attachments to the email, as those titles give insight into the privileged information exchanged in the prior emails.

### III.

Table 2 identifies seven log entries that failed to identify the name of the lawyer or law firm whose advice is provided or sought (FFR's Rule 37.2 Ltr. at 6-7; *id.*, Ex. 4, Table 2). RTC agreed to produce the documents for log entries 474 and 3007, and it clarified that the attorneys referred to in log entries 656 and 3560 were from Banner Witcoff (RTC's Rule 37.2 Resp. at 3). At the parties' meet and confer, FFR did not substantively dispute the sufficiency of this latter clarification (*see* 11/26/19 Meet and Confer Tr. at 19:4-20:9), so only log entries 186, 594, and 674 remain at issue.

**Log entry 186:** This log entry corresponds to an email sent from Gary Cohen, RTC's senior vice president of customer business development, to Richard Nathan, RTC's CEO. The email reflects Mr. Cohen's anticipated remarks to a third party about a contract negotiation. Nothing about this email warrants RTC's claim of attorney-client privilege as to the entire email. The content of the email is intended to be conveyed to a third party, which negates the confidentiality

requirement of the attorney-client privilege. *See RBS Citizens*, 291 F.R.D. at 216 ("The attorney-client privilege only shields communications that were intended to be confidential, so communications made to an attorney in the presence of a third party or made with the intent that they will be disclosed to a third party are not privileged"). However, we find that the first sentence of the third paragraph (starting with "We have") does convey information about legal advice provided by RTC's counsel.   And since this document is a draft, we do not know if that reference was in the final version of what Mr. Cohen told the third party.   If so, then FFR already has that information; if not, then the information retains its privileged character.   RTC thus may redact that sentence from the production of the email.

**Log entry 594 (redaction to RTC0249397-98):** This log entry corresponds to a redaction to an email sent by Mr. Nathan to Mr. Cohen, in which Mr. Nathan proposes a draft email to send to Walmart. The redaction contains the substance of legal advice from RTC's "IP attorney." Although the draft reflects a proposal to convey that information to Walmart, again we do not know that this occurred.   Under the reasoning we just offered with respect to Log entry 186, we find that RTC may retain that redaction.

**Log entry 674 (redaction to RTC0171836-38):** This log entry corresponds to a redaction to an email sent by Mr. Nathan to Larry O'Neill, RTC's COO. The redacted sentence refers to input given by RTC's "French counsel" regarding the signing of a contract. We find that this sentence sufficiently discloses the content of attorney advice and that RTC may maintain the redaction. Even so, we note the insufficiency of RTC's corresponding log entry, which simply refers to the attorney(s) whose advice is provided as "Outside Counsel" (RTC's 7th Suppl. Priv. Log. at 41). RTC should have investigated and determined the identity of the counsel before asserting its claim of privilege over this redaction. But because we are satisfied as to the privileged

nature of the redaction, we will not make RTC remove the redaction or supplement its privilege log description for this document.

## IV.

In Table 3, FFR identifies 14 entries from RTC's privilege log that purportedly fail to identify the legal issue and counter-party involved (FFR's Rule 37.2 Ltr. at 7-9; *id.*, Ex. 4, Table 3), although FFR focused only on RTC's failure to identify a counter-party at the parties' subsequent meet and confer (*see* 11/26/19 Meet and Confer Tr. at 20:10-21:14).[8] All the challenged entries originally referred to either "sales issues" or a "business transaction" (RTC's Original Priv. Log at 42, 43, 217, 1156, 1159, 1163, 1166, 1176 (log entries 654, 659, 660, 3129, 15192, 15193, 15229, 15294, 15295, 15347, 15495); RTC's 2d Suppl. Priv. Log at 5, 11 (log entries 16023, 16075, and 16076)). For such entries, the parties agreed to (1) identify the legal issue that was the subject of the communication and (2) disclose any identified counter-party to the sales or the business transaction (Parties' 10/18/19 Joint Submission at 2-3; *see also* 10/22/19 Order (adopting this agreement and also ordering "contracts/contract issues" entries to identify the counter-party)).

But when RTC served its fifth supplement on November 1—after the parties' agreement and our October 22 order—it had changed the descriptions for eight of the 14 challenged log entries to descriptions that did *not* expressly require the identification of a counter-party (RTC's 5th Suppl. Priv. Log at 227, 1718, 1722, 1729, 1735, 1748 (log entries 3129, 15192, 15193, 15229, 15294, 15295, 15347, 15495)).[9] RTC's seventh supplemental privilege log changed three more log entries

---

[8] The parties' meet and confer regarding Table 3 was woefully inadequate—it merely consisted of each side stating its respective position without any discussion of how the parties might reach agreement on the issue (11/26/19 Meet and Confer Tr. at 20:10-21:25).

[9] We do not know if RTC changed these descriptions before or after the parties agreed to identify the legal

in a similar manner (RTC's 7th Suppl. Priv. Log at 39-40 (log entries 654, 659, 660)). The three other challenged log entries, however, have remained "business transaction" entries throughout RTC's various supplements (*compare* RTC's 2d Suppl. Priv. Log at 5, 11 (entries 16023, 16075, 16076), *with* RTC's 7th Suppl. Priv. Log at 1513, 1517 (entries 16023, 16075, 16076)), and thus still require the disclosure of any identified counter-party.

The parties have submitted the documents pertaining to the 14 challenged log entries for our *in camera* review. To aid our discussion, we have grouped the log entries into two categories: (1) the log entries that no longer describe the documents as involving "sales issues" or "business transaction" entries; and (2) the log entries that retain the "business transaction" description.

## A.

RTC initially described each of the log entries from the first category as relating to either "sales issues" or a "business transaction," but it later changed these log entries to descriptions regarding "patent counseling," "patent prosecution," or "potential litigation":

| Log Entry | RTC's Description from Original Log (Jan. 18, 2019) | RTC's Description from 5th Suppl. Priv. Log (Nov. 1, 2019) | RTC's Description from 7th Suppl. Priv. Log (Nov. 18, 2019) |
|---|---|---|---|
| 654 | business transaction | evaluation of business transaction | patent counseling |
| 659 | business transaction | business transaction and related patent issues | patent counseling |
| 660 | business transaction | business transaction and related patent issues | patent counseling |
| 3129 | sales issues | legal advice of RTC's Brazilian attorneys regarding potential litigation | legal advice of RTC's Brazilian attorneys regarding potential litigation |
| 15192 | business transaction | patent prosecution | patent prosecution |
| 15193 | business transaction | patent prosecution | patent prosecution |
| 15229 | business transaction | patent prosecution | patent prosecution |
| 15294 | business transaction | patent prosecution | patent prosecution |
| 15295 | business transaction | patent prosecution | patent prosecution |

issue and counter-party for "sales issues" and "business transaction" log entries.

| 15347 | business transaction | patent prosecution | patent prosecution |
| 15495 | business transaction | patent prosecution | patent prosecution |

As already noted, "sales issues" and "business transaction" log entries must disclose any identified counter-party. On the other hand, there is no such requirement for a document that relates to "patent counseling," "patent prosecution," or "potential litigation."

After reviewing the withheld and redacted documents that correspond to this first category of log entries, we are hard-pressed to see what basis RTC had for initially describing the subject matter of these documents as involving business transactions or sales issues. RTC's initial descriptions exemplify what we perceive, based on our months of discovery supervision, to be a more widespread issue: RTC's persistent failure to provide sufficient privilege log descriptions. That shortcoming is evident from the fact that it took RTC several supplements before it ultimately set forth the descriptions we are now reviewing.

Nonetheless, we do not conclude that RTC changed the descriptions at issue simply to avoid identifying a counter-party in response to our October rulings and the parties' agreement. The changes appear to be good-faith (albeit belated) attempts by RTC to fix incorrect information. Thus, based on the latest iteration of RTC's privilege log, as well as our own review of the underlying documents, RTC is not required to identify a counter-party for the log entries at issue. Yet we still must determine whether RTC properly redacted or withheld the documents that correspond to this category of log entries. We do so below.

**Log entry 654 (redaction to RTC0171632-34):** This log entry represents a two-sentence redaction to an email sent by Gideon Schlessinger, RTC's vice president of product development, to Richard Nathan, RTC's CEO. The first sentence, which discloses that an attorney will get back to Mr. Schlessinger regarding a particular concept, reveals enough to implicate the attorney-client

privilege, and RTC may retain this redaction. The second sentence, however, merely discloses Mr. Schlessinger's non-attorney business assessment about the concept, which is not privileged information. RTC must remove the redaction from this sentence.

**Log entries 659 (redaction to RTC0171664-67) and 660 (redaction to RTC0171668-70):** These log entries represent the same redaction to an email sent by Mr. Schlessinger to Mr. Nathan, which RTC describes as reflecting legal advice about "patent counseling" (RTC's 7th Suppl. Priv. Log at 40). Although this description is rather vague—RTC could have described the redaction more specifically as relating to product clearance or freedom to operate—we agree with RTC's assertion of attorney-client privilege. RTC may retain its redactions to these documents.

**Log entry 3129 (redaction to RTC0181018-21):** This log entry corresponds to two redacted sentences from an email sent by Kenneth Bloom, RTC's CFO, to Mr. Nathan, and Mr. Nathan's email in response. RTC contends that this portion reflects legal advice regarding potential litigation (RTC's 7th Suppl. Priv. Log at 199). The redacted sentences merely reveal that Mr. Bloom spoke to attorneys about a certain potential litigation matter to form a plan and to understand RTC's options. They do not reveal the information provided to counsel or the substance of these attorneys' advice about the matter; the disclosure is on par with the level of detail that might be disclosed in a privilege log. The redacted information is not privileged, and RTC must produce this document without redaction.

**Log entries 15192, 15229, and 15294:** These log entries relate to three nearly identical email chains. The first ten emails of each chain—beginning with the December 10, 2012 email from Joseph Berghammer, RTC's attorney, to Mr. Schlessinger and John Ward, RTC's vice president of product management, and ending with the February 11, 2013 email from Tony DiPaolo, an RTC senior product development manager, to Stuart Parsons, RTC's Head of Ready

25

Team, and Barry Hearn, an RTC account director—are the same emails as the first ten emails of the email chain corresponding to log entry 13122. These emails are properly withheld for the same reasons as discussed with respect to that log entry.

The eleventh email in the chain, sent by Mr. Hearn to Mr. DiPaolo on February 12, is also the same as the eleventh email in the chain corresponding to log entry 13122. It must be produced in its entirety, as discussed with respect to that log entry.

The content of the twelfth email in the chain, sent by Mr. DiPaolo to Messrs. Hearn and Parsons on February 13, is the same as the twelfth email in the chain for the document provided with respect to log entry 13122. However, unlike the twelfth email in log entry 13122, the twelfth email for log entries 15192, 15229, and 15294 does not list the titles of the attachments to the email. Thus, this email must be produced in its entirety.

The thirteenth (and last) emails in the chains corresponding to log entries 15192, 15229, and 15294 are different from each other and are also not found in the document represented by log entry 13122. These emails—Mr. Parsons's February 14 email to Mr. DiPaolo (log entry 15192); Mr. Hearn's February 13 email to Mr. DiPaolo and Mr. Parsons (log entry 15229); and Mr. Hearn's February 14 email to Mr. DiPaolo (log entry 15294)—do not reveal legal advice or the substance of confidential information provided by the RTC employees to obtain legal advice. These emails are not privileged and must be produced.

**Log entry 15193:** This log entry corresponds to the attachment to Mr. Parsons's February 14, 2013 email to Mr. DiPaolo that is represented by log entry 15192. The attachment is a document intended to be sent to RTC's attorneys. After considering the context of the entire email chain and the substance of the attached document, we conclude that the document is privileged; it

contains information that is intended to be used by RTC's attorneys to render legal advice and services in connection with a patent application. Thus, RTC may withhold this document.

**Log entry 15295:** This log entry corresponds to the attachment to Mr. Hearn's February 14, 2013 email to Mr. DiPaolo that is represented by log entry 15294. The attachment is the signature page of a document signed by Mr. Hearn. Considering the context of the entire email chain, it appears that the document was intended to be conveyed to RTC's attorneys. However, we do not see anything in the document that reveals or suggests the substance of the information to be provided to RTC's attorneys or the purpose for which the signature is being provided. We find that the attachment is not privileged, and RTC must produce it.

**Log entry 15347:** This log entry relates to an email chain that contains many of the same emails that we have already found privileged in connection with log entries 15192, 15229 and 15294. Thus, RTC may continue to withhold the portion of the chain beginning with the December 10, 2012 email from Mr. Berghammer to Messrs. Ward and Schlessinger and ending with the February 11, 2013 email from Bradley Van Pelt, RTC's attorney, to Messrs. Ward, DiPaolo, and Schlessinger. But the remaining emails—Mr. Ward's February 11, 2013 email to Mr. DiPaolo and Mr. DiPaolo's same-day response—do not reveal or suggest any privileged aspect of the previous emails in the chain, such as legal advice or information provided for obtaining legal advice. RTC must produce these final two emails.

**Log entry 15495:** This log entry, like log entry 15347, relates to an email chain that contains many of the same emails that we have already found privileged in connection with log entries 15192, 15229 and 15294. RTC may continue to withhold the portion of the chain beginning with the December 10, 2012 email from Mr. Berghammer to Messrs. Ward and Schlessinger and

ending with the January 2, 2013 email from Mr. Van Pelt to Messrs. Ward, DiPaolo, and Schlessinger.

The next email in the chain, sent by Mr. Schlessinger to Messrs. Hearn and Parsons, appears to be the same as the ninth email in the chain represented by log entry 12883. As with that log entry, RTC may redact the third sentence of Mr. Schlessinger's email beginning with "Can you," but it must produce the remainder of the email.

The remaining two emails—Mr. Hearn's January 3, 2013 email to Mr. Schlessinger and Mr. Schlessinger's January 3, 2013 email to Mr. Hearn in response—do not reveal or suggest any privileged aspect of the previous emails in the chain, such as legal advice or information provided for obtaining legal advice. RTC must produce these emails.

## B.

The second category of log entries (entries 16023, 16075, and 16076) represent redactions to documents RTC produced at RTC0192854, RTC0195288-309, and RTC0195341-362, respectively. RTC describes the subject matter of these redactions as advice sought about or reflecting "[b]usiness transactions relating to descriptions of services provided by counsel" and says that there is no counter-party involved (RTC's 7th Suppl. Priv. Log at 1513, 1517).

Regardless of whether these descriptions comply with our October 22 order, the withheld information is not legal advice or otherwise privileged information. For log entry 16023, RTC has redacted the amount of total intercompany purchases in 2013 and the amounts of sales, costs of goods, and expenses for one specific geographical sector. Such information is clearly not protected by the attorney-client privilege. The other redactions pertaining to these log entries are similarly meritless. This redacted information shows the amount of certain legal and other professional fees and the provider of the corresponding services. We made clear in our October 8, 2019 opinion that

the identities of attorneys working for a party are not privileged, nor are "[t]he charges for a law firm's services and the amount of other services or expenses (even if, in part, legal) . . . privileged pieces of information" (10/8/19 Op. at 29). Although we made this ruling in connection with FFR's privilege log, the reasoning, of course, applies equally to both parties' logs. In fact, we reminded *both* parties that they "should re-review their respective privilege logs and the underlying documents and decide whether, given our rulings today, any documents should be produced" (*Id.* at 40). Because there is no basis for RTC to maintain the redactions at issue, we order RTC to produce RTC0192854, RTC0195288-309, and RTC0195341-362 without redaction.

## V.

Table 4 identifies more than 200 log entries where RTC initially described the underlying documents as relating to patent prosecution but then changed the description in its fifth supplemental privilege log (FFR's Rule 37.2 Ltr. at 10-12; *id.*, Ex. 4, Table 4). FFR contends that these unexplained and unjustified "modifications call into question the methods by which RTC prepared its privilege log descriptions over the course of its various privilege log editions, and prejudice FFR's ability [to] meaningfully assess RTC's privilege claims" (FFR's Rule 37.2 Ltr. at 10). Accordingly, FFR wants RTC to produce all the documents corresponding to the changed entries in unredacted form (*Id.*).

Earlier in this litigation, RTC made a similar argument when it argued that FFR's unexplained changes to certain privilege log entries were so fundamental that any presumption of privilege was destroyed (10/8/19 Op. at 15-16). We rejected RTC's argument (*id.* at 16-17), and we likewise reject FFR's argument here. That said, neither RTC nor FFR should have changed changing the descriptions of its privilege log entries simply to avoid providing the information we ordered the parties to provide for certain log entries (*see* 10/22/19 Order).

As for the 15 documents submitted by the parties in connection with Table 4, our privilege rulings are as follows.

**Log entry 1 (redactions to RTC0148333-35):** We addressed these redactions in our February 26, 2020 Order resolving FFR's motion to compel the production of RTC's October 28 claw back documents (*see* 2/26/20 Order at 3) (addressing claw back document # 4, RTC0148333). RTC must unredact the underlying document in accordance with that Order.

**Log entry 2054:** This log entry corresponds to an email chain. The first email, sent by Scott Burow, an attorney for RTC, to Richard Nathan, RTC's CEO, and Gary Cohen, RTC's senior vice president of customer business development, is a privileged communication and properly withheld. The second email, where Mr. Nathan merely forwards Mr. Burow's email to Stephen Hardy, director of new product design at RTC, without substantive comment, does not disclose any privileged information and should be produced. The third and last email, sent by Mr. Hardy to Mr. Nathan, discusses and analyzes the information and advice provided by Mr. Burow related to product design in light of existing intellectual property. RTC's assertion of attorney-client privilege is proper as to this email.

**Log entry 3261:** RTC describes this entry as an email regarding patent counseling (RTC's 7th Suppl. Priv. Log at 207). The corresponding document provided to us for *in camera* review is an email chain consisting of emails sent between John Ward, RTC's vice president of product management, and Brian Callahan, an RTC design engineer.[10] Many portions of the email chain do not contain privileged information and should be produced. RTC may, however, redact the

---

[10] RTC's privilege log indicates that some portion of this email chain was produced to FFR as Bates number RTC0181767. We do not know what portion has been produced, however, because RTC did not provide us with the Bates-stamped version of this document.

following portions of the emails on the basis of attorney client privilege: (1) Mr. Ward's July 19, 2013 email to Mr. Callahan: "As it turns out . . . up on this."; (2) Mr. Ward's July 25, 2013 11:04 a.m. email to Mr. Callahan: "I got an email . . . info on the parts."; and (3) Mr. Ward's July 25, 2013 11:21 a.m. email to Mr. Callahan: the sentence beginning with "I caught . . ." and the sentence beginning with "Can you . . .?".

**Log entries 4296 and 4303:** The emails pertaining to these log entries are the same as emails we already addressed with respect to log entry 4301. RTC must produce the emails with redactions in accordance with our discussion for log entry 4301.

**Log entries 4332, 4341, and 4355:** RTC describes these log entries as email chains addressing "patent counseling" (RTC's 7th Suppl. Priv. Log at 290-91). Log entry 4341 represents the first three emails in the chain, log entry 4355 represents the first four emails in the chain, and log entry 4332 represents all five emails in the chain. The five emails in the chain represented by log entry 4332 are: (1) an email from Mr. Burow to Mr. Nathan providing information and legal advice regarding intellectual property and product design; (2) an email from Mr. Nathan to Messrs. Hardy, Cohen, and Ward that forwards Mr. Burow's email and comments on the substance of Mr. Burow's email; (3) a response email from Mr. Hardy to Messrs. Nathan, Cohen, and Ward that analyzes the legal advice provided by Mr. Burow; (4) an email from Mr. Nathan to Mr. Hardy, in response to email # 3, which discusses Mr. Hardy's analysis of Mr. Burow's legal advice and refers to legal advice and analysis on the issue provided by RTC's attorneys; and (5) Mr. Hardy's response to email # 4, in which Mr. Hardy furthers the discussion about the legal advice and provides further analysis. Because all these emails are protected by the attorney-client privilege, we find that RTC's assertion of the privilege for log entries 4332, 4341, and 4355 is proper.

**Log entry 4465:** This log entry corresponds to an email chain between RTC employees. The emails in the chain refer to intellectual property and Banner Witcoff, but nowhere do the emails disclose legal analysis or advice from Banner Witcoff. Nor do they disclose information that is clearly intended to be sent to Banner Witcoff for the purpose of obtaining legal advice. The emails are not privileged and RTC must produce them.

**Log entry 4530:** RTC describes this log entry as representing an "[e]mail chain providing information for the purpose of seeking legal advice from attorney Joseph J. Berghammer from Banner & Witcoff, Ltd. re: competitor patent" (RTC's 7th Suppl. Priv. Log at 306). The format of the document provided by RTC for our *in camera* inspection has hindered our review (more so than has been the case with the other documents), but there appears to be four emails at issue: (1) an email sent by Paul Braine, an RTC sales director, to Mr. Nathan and Joel Linton, RTC's director of international marketing, which attaches several images; (2) an email sent by Mr. Nathan to Mr. Hardy, Mr. Ward, and Mr. Berghammer, among others, attaching the images sent by Mr. Braine; (3) an email from Mr. Ward to Mr. Hardy forwarding Mr. Nathan's email; and (4) Mr. Hardy's response to Mr. Ward's email.[11]

The email sent by Mr. Nathan to Mr. Berghammer and others (email # 2) is privileged because it reflects the provision of information for the purpose of obtaining legal advice, although we note that the advice sought appears to be regarding a competitor's *product*, and not the competitor's *patent*. As for the other emails, there is no indication that Mr. Braine sent the first email with the intent that the information provided therein be provided to counsel. And the third

---

[11] Our analysis does not consider the attached images, as the images were not provided for our review. It appears that the images may have been, at least at one time, the subject of a separate privilege log entry (*see* RTC's 8/9/19 Amended Priv. Log at 252 (log entry 4531)).

and fourth emails (involving only Messrs. Ward and Hardy) merely discuss the attached images without any reference to the legal advice sought by Mr. Nathan. These three emails are not privileged and must be produced.

**Log entry 6712:** RTC describes this log entry as representing an email chain about patent counseling (RTC's 7th Suppl. Priv. Log at 548). The first four emails of the chain are the same emails as the ones we already found not privileged in connection with analyzing log entry 4465, so we only discuss the final email in the chain. This email was sent by Mr. Ward to Mr. Schlessinger and Mr. Hardy. Mr. Ward spends most of the email relaying a discussion he had with Mr. Berghammer and advice he received from Mr. Berghammer about searching patent databases. This portion of the email, beginning with "Searching for . . ." through the end of the email, may be redacted by RTC on the basis of attorney-client privilege. The first two sentences of the email, however, are not privileged.

**Log entry 6779:** This log entry represents an email sent by Mr. Ward to other RTC employees that discusses patent searches conducted on Banner Witcoff's behalf. The email discloses enough about the strategy, procedure, and results of the searches that we find RTC's assertion of attorney-client privilege over this email is proper.

**Log entry 9769:** This log entry corresponds to an email chain between RTC employees. The emails discuss patents and, in the last email, the author (Mr. Hardy) (1) asks whether Banner Witcoff has been involved yet and (2) expresses the belief that Banner Witcoff should review a certain issue. Despite these references to Banner Witcoff, the emails are not privileged: they do not disclose any legal advice or analysis; nor do they disclose confidential information that is clearly intended to be relayed to attorneys to obtain legal advice. RTC's assertion of attorney-client privilege is improper, and it must produce the corresponding emails.

**Log entry 14183 (redaction to RTC0187594):** This log entry represents redactions to an email sent by Mr. Ward to other RTC employees. The redacted sentences appear to pertain to attorney approval for certain actions, so we find them properly redacted.

**Log entry 15264:** This log entry represents an email where Mr. Ward forwards an email to Mr. DiPaolo. The forwarded email, which was written by Mr. Ward and sent to attorneys, provides information to the attorneys related to their ability to advise RTC about the development of intellectual property. Because the forwarded email is privileged and Mr. Ward's forwarding of this email to another RTC employee does not waive the privilege, we find RTC's attorney-client privilege assertion proper.

## VI.

We end by noting that the rulings contained in this Memorandum Opinion and Order are not limited to the specific log entries that have been discussed in connection with FFR's motion. RTC should re-review its privilege log and the underlying documents and decide whether, given our rulings today, any additional documents should be produced. Also, our rulings are subject to our March 9, 2019 Memorandum Opinion and Order finding that RTC waived the attorney-client privilege as to certain subject matter (doc. # 443). Thus, even if we have found that a particular document is privileged in this opinion, RTC must produce that document if (1) RTC does not disclaim reliance on the October 4,. 2019 emails and (20 the document falls within the scope of the subject matter waiver.

## **CONCLUSION**

For the foregoing reasons, we grant in part and deny in part FFR's motion to compel (doc. # 322). RTC must comply with the production and review required by this Memorandum Opinion and Order by April 30, 2020.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: March 24, 2020**